UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GOVERNMENT OF GUAM RETIREMENT FUND, on Behalf of Itself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INVACARE CORPORATION, *et. al.*,<br><br>Defendants. | Case No. 1:13-cv-1165-CAB<br><br>CLASS ACTION |

## LEAD PLAINTIFF'S RESPONSE TO DEFENDANTS' NOTICE OF RECENT AUTHORITY

Defendants again provide notice of recent authority that is off-point and provides no support for Defendants' motion to dismiss.

In *Florida Carpenters Regional Council Pension Plan v. Eaton Corp.*, Nos. 13-4059/13-4354, 2014 U.S. App. LEXIS 13489 (6th Cir. July 11, 2014) ("*Eaton*"), the plaintiff alleged that a power management company misled investors regarding its involvement in, and cover-up of, a scheme to improperly influence a former Mississippi trial court judge who had presided over the company's trade secret lawsuit against a rival manufacturer. *See Eaton* at 1-2. According to the plaintiff, the company committed securities fraud when its spokespeople denied that the company had attempted to influence the trial judge improperly. *Id.* at 2. The plaintiff argued that the fraud was revealed when affidavits were released from the trade secret litigation wherein

1

company officers admitted that mistakes had been made and the company did not fulfill its discovery obligations. *Id.* at 5.

The district court dismissed plaintiff's claims for, *inter alia*, failing to adequately plead loss causation, holding that the loss causation allegations consisted of mere "boilerplate" language and did not plausibly establish that the subject drop in the company's stock price was caused by the alleged misstatements. *Id.* at 5. The Sixth Circuit affirmed, reasoning that by the time the affidavits were provided, the market already knew of the company's "unsavory litigation practices" because the company had been severely sanctioned in the trade secret litigation two years earlier—including $1.5 million for discovery violations and the dismissal of its suit. *Id.* at 7. The Sixth Circuit further reasoned that the affidavits could not be "corrective disclosures" because they concerned the same failure to turn over discovery documents disclosed two years prior, whereas plaintiff's securities fraud claims were based on misstatements concerning the company's effort to improperly influence the judge. *Id.* at 7-8.

Lead Plaintiff's Complaint [ECF No. 34] contains no such causal disconnect. Instead, the Complaint alleges a straightforward and common sense connection between Defendants' false and misleading statements and omissions about Invacare's compliance with FDA regulations and failure to disclose the heightened risk of adverse consequences from the Company's repeated receipt of Forms 483 addressing pervasive and repeated violations. *See* Fed. R. Civ. P. 8(a)(2); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 337 (2005) (complaint need only provide "a short and plain statement" pursuant to Rule 8(a)(2) that provides "some indication of the loss and the causal connection" to the misstatements). Specifically, the Complaint alleges that investors first began to learn the true extent and severity of Invacare's quality, safety, and regulatory compliance deficiencies when, on (i) January 4, 2011, the FDA publicly released a copy of its

previously undisclosed December 15, 2010 Warning Letter to Invacare outlining a host of regulatory compliance deficiencies at the Company's Sanford Facility (¶235); (ii) October 27, 2011, Invacare issued a press release disclosing for the first time that the Company was "actively making systemic improvements across its quality and regulatory systems" in response to the deficiencies cited by the FDA over the course of the preceding year (¶236); and (iii) December 8, 2011, Invacare issued a press release revealing that the FDA intended to issue a consent decree of injunction that would suspend normal operations at Invacare's Taylor Street facility and Corporate Headquarters until the FDA determined that a variety of systemic and recurring regulatory compliance deficiencies had been adequately addressed by the Company (¶237).

Unlike in *Eaton*, **none** of the foregoing information was previously known to the market. For example, Defendants' claim that "the market was repeatedly updated with complained-of information about Invacare's compliance issues" before the corrective disclosures ignores, among other things, at least five FDA Forms 483 issued to the Company addressing the same serious and recurring issues that led to the Warning Letter and Consent Decree, which Defendants did not timely disclose and now argue were "immaterial." *See* Lead Plaintiff's Opposition to Defendants' Motion to Dismiss ("MTD Opp.") [ECF No. 37], at 25 n.19. Also unlike *Eaton*, **none** of the foregoing information is extraneous to the alleged misstatements, but rather directly concerns the truth about Invacare's regulatory compliance deficiencies and the foreseeable risk of its noncompliance. *See id.* at 24-25.

Defendants' attempt to cast all three partial corrective disclosures as "old news" and "cumulative" of their prior disclosures regarding Invacare's purported regulatory compliance efforts is without merit and irreconcilable with the record. The crux of Lead Plaintiff's loss causation theory is that the nature, extent and severity of the problems were ***far greater*** than

Defendants represented, and that contrary to their "updates" to the market, Defendants consistently ignored and refused to genuinely address the problems. *See id*. at 1-2, 25, 27. Indeed, unlike in *Eaton*, the same statements that Defendants argue were "continuous updates regarding Invacare's compliance issues" are alleged to be further misstatements. *Id.* at 25-26. Moreover, Defendants' contention that the corrective disclosures merely confirmed the Company's prior "updates" is flatly belied by the market's reaction, which caused Invacare's stock price to ***drop*** by a total of approximately ***38%*** as the gravity and foreseeable consequences of Invacare's systemic regulatory compliance deficiencies was revealed—for which Defendants offer no plausible competing explanation.

Dated: July 28, 2014                                        Respectfully submitted,

                                         */s/ Benjamin Galdston*

                                         **BERNSTEIN LITOWITZ BERGER**
                                            **& GROSSMANN LLP**
                                         Blair A. Nicholas (admitted *Pro Hac Vice*)
                                         Benjamin Galdston (admitted *Pro Hac Vice*)
                                         David R. Kaplan (admitted *Pro Hac Vice*)
                                         12481 High Bluff Drive, Suite 300
                                         San Diego, California 92130
                                         Telephone: (858) 793-0070
                                         Facsimile:  (858) 793-0323

                                         *Counsel for Lead Plaintiff Government of*
                                         *Guam Retirement Fund and the Class*

                                         **CLIMACO, WILCOX, PECA,**
                                          **TARANTINO & GAROFOLI CO., LPA**
                                         John R. Climaco (0011456)
                                         Scott D. Simpkins (0066775)
                                         55 Public Square, Suite 1950
                                         Cleveland, Ohio 44113
                                         Telephone: (216) 621-8484
                                         Facsimile: (216) 771-1632

                                         *Local Counsel for Lead Plaintiff Government*
                                         *of Guam Retirement Fund*

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically this 28th day of July, 2014. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<i>/s/ Benjamin Galdston</i>