UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| GOVERNMENT OF GUAM RETIREMENT FUND, etc., | CASE NO. 1:13CV1165 |
| | JUDGE CHRISTOPHER A. BOYKO |
| Plaintiff, | |
| vs. | **OPINION AND ORDER** |
| INVACARE CORPORATION, et al., | |
| Defendants. | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon the Motion (ECF DKT #36) of Defendants to Dismiss the Amended Complaint Pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6). For the following reasons, the Motion is denied.

**I. FACTUAL BACKGROUND**

Lead Plaintiff, the Government of Guam Retirement Fund, brings this putative private securities fraud class action, individually and on behalf of all persons or entities who purchased or otherwise acquired the publicly traded common stock of Invacare Corporation between February 27, 2009 and December 7, 2011, against Invacare, a manufacturer and

distributor of home and long-term care medical products; Gerald B. Blouch ("Blouch"), its President and Chief Executive Officer ("CEO"); and A. Malachi Mixon, III ("Mixon"), its Chairman, founder and former CEO, for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5. Principally, Plaintiff alleges that Defendants made numerous false and misleading statements, misrepresentations and omissions during the Class Period regarding Invacare's compliance with the Food, Drug and Cosmetic Act ("FDCA") and current Good Manufacturing Practices ("cGMP"). While assuring investors, in its annual reports, securities filings and press releases, that Invacare was working with the FDA, strengthening compliance programs and addressing specific problems, Invacare was cited for violations in multiple FDA Form 483 inspection reports and received a formal Warning Letter on December 15, 2010, which was released to the public on January 4, 2011. Ultimately, on December 20, 2012, the United States filed a Complaint for Permanent Injunction against Invacare, which resulted in a Consent Decree.

In their Motion to Dismiss, Defendants argue that Plaintiff's Amended Complaint fails to identify any actionable misstatements or omissions; fails to raise a strong inference of scienter; fails to adequately plead loss causation; alleges claims that are time-barred; and Plaintiff's Section 20(a) claims, which allege only secondary liability (that is, are dependent upon the primary liability claims), necessarily must fail also.

Plaintiff insists that Defendants' false and misleading statements and omissions regarding Invacare's regulatory compliance have been identified with particularity and are actionable. Moreover, the Amended Complaint "demonstrates the materiality of the

information falsely stated or omitted; establishes Defendants' duty to disclose such material non-public information; provides detailed facts that, taken together and viewed holistically, raise a strong inference of scienter as to Invacare and the Individual Defendants (or an inference that is at least as compelling as any opposing inference); and explains how the disclosure of Defendants' false and misleading statements and omissions caused damages to Lead Plaintiff and other members of the Class." (ECF DKT #37 at vii).  Plaintiff contends its claims are timely because the statute of limitations for a Section 10(b) action does not begin to run until a plaintiff actually discovers, or a reasonably diligent plaintiff would have discovered, the facts constituting all the elements of a Section 10(b) violation.  *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633, 648 (2010).  Finally, because the Amended Complaint does state a claim under Section 10(b), and because Defendants do not dispute that they were in a position of control, Plaintiff has alleged a valid Section 20(a) claim.

## II. LAW AND ANALYSIS

### Civil Rule 12(b)(6) Standard

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  The court need not, however, accept conclusions of law as true:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  As the Court held in [*Bell Atlantic v.*] *Twombly*, 550 U.S. 544, 127 S.Ct. 1955 [(2007)], the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-Defendant-unlawfully-harmed-me accusation. *Id.* at 555.  A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555.  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a Defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a Defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to the Sixth Circuit, the standard described in *Twombly* and *Iqbal* "obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir.2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir.2007)).

The Court should disregard conclusory allegations, including legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *J & J Sports Prods. v. Kennedy*, No. 1:10CV2740, 2011 U.S. Dist. LEXIS 154644, *4 (N.D.Ohio Nov. 3, 2011).

**Civil Rule 9(b) Standard**

Securities fraud claims, as with any fraud claim, must satisfy the pleading requirements of Rule 9(b). *Konkol v. Diebold, Inc.*, 590 F.3d 390, 396 (6th Cir.2009); *Frank v. Dana Corp.*, 547 F.3d 564, 569-570 (6th Cir.2008).

Parties pleading fraud are obligated to place defendants on notice of the "precise misconduct" with which they are accused. *U.S. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir.2008). The purpose of Rule 9(b)'s particularity requirement "is to provide a defendant fair notice of the substance of a plaintiff's claim in order that the defendant may prepare a responsive pleading." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir.

1988).  See also *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir.1999).

Under Fed.R.Civ.P. 9(b), a plaintiff's complaint must "(1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent." *Indiana State Dist. Council of Laborers and Hod Carriers Pension Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 943 (6th Cir.2009) ("*Omnicare I*") (internal citations omitted.).  At a minimum, a plaintiff "must allege the time, place and contents of the misrepresentations upon which they relied." *Frank*, 547 F.3d at 570.

**Elements of claim under Section 10(b) and Rule 10b-5**

In order to state a claim under Section 10(b) of the Exchange Act and Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiative, Inc. v. Siracusano*, __U.S. __, 131 S.Ct. 1309, 1317 (2011) (internal citation omitted); see also *Omnicare I*, 583 F.3d at 942.

**Actionable misstatements**

At the outset, Invacare asserts that the alleged misstatements in the Amended Complaint are simply general comments or opinions by Defendants as to the Company's compliance with the FDCA and cGMP.  In a number of instances in the Sixth Circuit, securities fraud claims based on statements of legal compliance, corporate "puffery," and protected, forward-looking comments have not survived dismissal.  *Omnicare I*, 583 F.3d at

945-47; *City of Pontiac General Employees' Retirement System v. Stryker Corp.*, 865 F.Supp.2d 811, 829, 831 (W.D.Mich.2012).  However, it is also true in this Circuit that when a statement or comment of regulatory compliance is subject to objective verification, it may be actionable.  *City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 674 (6th Cir.2005).

To exemplify their argument, Defendants point to certain allegations in the Amended Complaint which they contend are non-actionable opinion, belief or corporate puffery:

> The company has established numerous policies and procedures that the company ***believes*** are sufficient to ensure that the company will operate in substantial compliance with these laws and regulations.  (Emphasis added). (ECF DKT #34 at ¶¶ 159, 173, 201, 202).

> The company continues to strengthen its programs to better ensure compliance with applicable regulations.  (ECF DKT #34 at ¶¶ 157, 158, 174, 191).

The Court appreciates Defendants' position as far as it goes; but, Defendants do not provide the complete picture.  The Court finds that statements made in the same time frame and quoted in the allegations of the Amended Complaint constitute more than opinion, are verifiable and thus, are actionable so as to survive dismissal.  For example:

> However, the 2009 Annual Report assured investors that Invacare ***"has addressed"*** the FDA's inspectional observations on the Form 483 and ***"continues to strengthen its programs to better ensure compliance with applicable regulations."***  Invacare's 2009 Annual Report contained certifications by Defendant Mixon ..."  (Emphasis in original). (ECF DKT #34 at ¶ 174).

>  In a January 4, 2011 press release, ... "Invacare wants to assure users and the general public that we rigorously test our products and stand fully behind the safety of our products*.  **The FDA warning letter does not state that our products are unsafe nor has it impacted our production.  The letter is related to documentation procedures.  We take all FDA matters very seriously, and we intend to address all of the FDA's concerns,"*** said Gerald B. Blouch,

-6-

> *president and chief executive officer.*
> The Company has assembled a team including its internal quality and regulatory associates as well as outside experts to address the agency's concerns. (Emphasis in original). (ECF DKT #34 at ¶ 187).

The "Frequently Asked questions" section of the Company website also included a page specifica

> *Will the FDA warning impact Invacare's operations?*
> *To ensure that Invacare will continue to meet or exceed all regulatory requirements, the Company has assembled a team of internal quality and regulatory associates and outside experts to review the FDA's comments and recommend enhancements or improvements. This team will report directly to Gerry Blouch, president and CEO of Invacare and will ensure that the solutions we initiate are meaningful and permanent. In fact, as the team looks at possible enhancements or improvements at Sanford, these changes will be considered for all Invacare facilities.*
> (Emphasis in original). (ECF DKT #34 at ¶ 191).

**Materiality**

Defendants also insist that dismissal is appropriate because the information alleged to have been omitted by Invacare is immaterial as a matter of law, and thus, not subject to a duty to disclose. At this juncture, the Court will not dismiss the Amended Complaint, nor any portion of it, on the basis of materiality.

The Section 10(b) element of materiality is satisfied when there is a substantial likelihood that a reasonable investor would have viewed a statement or disclosure of an omitted fact "as having significantly altered the 'total mix' of information made available." *Basic Inc. v. Levinson*, 485 U.S. 224, 232 (1988). The Supreme Court has instructed that the issue of materiality is a mixed question of law and fact. *TSC Indus., Inc. v Northway, Inc.*, 426 U.S. 438, 450 (1976). Because of that mixed nature, the materiality issue is wisely reserved for the trier of fact.

**Scienter**

Defendants argue that the Amended Complaint fails to meet the standards for scienter under the Private Securities Litigation Reform Act ("PSLRA"). In addition to the particularity pleading requirements of Fed.R.Civ.P. 9(b), the PSLRA imposes "[e]xacting pleading requirements" for pleading scienter in a securities fraud case. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). A private securities complaint, alleging that a defendant made a false or misleading statement, must ... "state with particularity facts giving rise to a ***strong inference*** that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(1), (2). (Emphasis added). The PSLRA "requires plaintiffs to state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, i.e., the defendant's intention to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 313. For purposes of securities fraud litigation, the Sixth Circuit has instructed:

> We have held that, following passage of the PSLRA, a plaintiff may plead scienter in a securities fraud complaint by alleging facts that give rise to a strong inference of recklessness. [] Recklessness sufficient to satisfy 10b-5 is 'a mental state apart from negligence and akin to conscious disregard.' [] It is 'highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it.' [] A plaintiff may survive a motion to dismiss only by pleading with particularity facts that give rise to a strong inference that the defendant acted with knowledge or conscious disregard of the fraud being committed. []. (internal citations omitted).

*Louisiana School Employees' Retirement System v. Ernst & Young, LLP,* 622 F.3d 471, 478-479 (6th Cir.2010).

The district court must view the complaint in its entirety, and determine whether the "alleged facts collectively ...give rise to a strong inference of actual knowledge or recklessness." *Ernst & Young*, 622 F.3d at 479 (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 690 (6th Cir.2004)).

-8-

"[T]he court must take into account plausible opposing inferences." *Tellabs*, 551 U.S. at 323.  The Sixth Circuit, in *Ernst & Young*, elaborates:

> A complaint will survive a motion to dismiss only if "a reasonable person would deem the inference of scienter cogent and **at least as compelling** as any opposing inference one could draw from the facts alleged." (Emphasis added). When two equally compelling inferences can be drawn, one demonstrating scienter and the other supporting a nonculpable explanation, *Tellabs* instructs that the complaint should be permitted to move forward.

*Id* at 479.  (internal citations omitted).

Plaintiff's 132-page Amended Complaint outlines the history of the FDA's regulation and investigation of Invacare, including approximately five Form 483's and a Warning Letter issued during the relevant Class Period.  Plaintiff alleges that, as a direct result of Defendants' material misrepresentations and omissions regarding the Company's regulatory compliance and their non-disclosure of pervasive quality and safety deficiencies, the price of Invacare common stock was artificially inflated.  Once the truth was disclosed, Plaintiff claims the price of Invacare stock dropped significantly.

The lengthy Amended Complaint describes numerous, pervasive and repeated violations of FDA and FDCA regulations, of which Defendants were made aware; and which presented the near certainty that the FDA would take corrective action against the Company.

As a general practice, following FDA inspections and the discovery of "significant" deviations from cGMP, a Form 483 is delivered to senior management.  (ECF DKT #34 at ¶ 53).  At the conclusion of a December 2008, December 2010, and two August 2011 inspections, among others, the investigators issued Form 483's to Invacare and discussed their observations with Company representatives.  (FDA Complaint, ECF DKT #34-6 at ¶ 28). Further, the allegation at ¶ 24 of the FDA Complaint against Invacare reads: "Defendants are

well aware that their practices violate the Act.  FDA has repeatedly warned Defendants, both orally and in writing, about their violative conduct, and has emphasized the importance of Defendants' compliance with the Act."

Part of Plaintiff's investigation prior to suit included interviews with former Invacare employees, identified in the Amended Complaint as Confidential Witnesses.  Confidential Witness 1 ("CW1") was Invacare's Manager of Regulatory Affairs from September 2010 through July 2013.

> CW1 confirmed that the CEOs at Invacare, i.e., Defendants Blouch and Mixon, received every Form 483 sent to the Company, as the FDA purposefully addresses Forms 483 directly to a company's CEO.  CW1 further confirmed that all of the issues identified in the Forms 483 and the Warning Letter that ultimately led to the FDA Complaint were legitimate, long-standing problems at Invacare.  (ECF DKT #34 at ¶ 66).

The December 15, 2010 Warning Letter was addressed to Defendant Mixon and it cautioned as follows:

> The specific violations noted in this letter and in the Inspectional Observations, Form FDA 483 (FDA 483), issued at the closeout of the inspection *may be symptomatic of serious problems in your firm's manufacturing and quality assurance systems.  You should investigate and determine the causes of the violation(s), and take prompt actions to correct the violations and to bring your products into compliance*.  (Emphasis in original).  (ECF DKT #34 at ¶ 99).

This is in stark contrast to Defendant Blouch's "Message from CEO Regarding FDA Letter."

> *It is also important to know that the FDA letter specifically focuses on internal documentation and procedural processes at the Sanford Facility.  It does not call into question the safety or efficacy of Invacare products, and it has not impacted production*.  (Emphasis in original).  (ECF DKT #34 at ¶ 190).

The 2008 Invacare Annual Report included a "Risk Factors" section, which recited in part:

-10-

> The company is subject to extensive government regulation, and if the
> company fails to comply with applicable laws or regulations, the company
> could suffer severe criminal or civil sanctions or be required to make
> significant changes to the company's operations that could have a material
> adverse effect on the company's results of operations. ... Violations of law or
> regulations can result in severe criminal, civil and administrative penalties and
> sanctions, including disqualification from Medicare and other reimbursement
> programs, which could have a material adverse effect on the company's
> business. (ECF DKT #34 at ¶ 159).

The 2008 Annual Report and that year's SEC filings directed investors to "carefully consider" the "Risk Factors," and bore a certification by Defendant Mixon. *Id*. at ¶ 160. The "Risk Factors" language appeared again in the 2009 and 2010 Annual Reports, with Defendant Mixon's certification. *Id*. at ¶¶ 173, 174, 201-203. The 2009 Annual Report specifically "assured investors that Invacare 'has addressed' the FDA's inspectional observations on the Form 483." *Id*. at ¶ 174.

On December 15, 2010, the FDA issued a Warning Letter to Invacare, which was released to the public by the FDA on January 4, 2011. *Id*. at ¶ 184. The Warning Letter stated that the FDA's observations "may be symptomatic of serious problems in your firm's manufacturing and quality assurance systems;" and Invacare must take "prompt actions to correct the violations and to bring [its] products into compliance." *Id*. at ¶ 186. Defendant Blouch issued press releases on January 4, 2011 and February 3, 2011, as well as comments on the Company website. *Id*. at ¶¶ 187, 190, 197. Blouch described the FDA observations as relating to documentation and reporting procedures and not product safety. *Id*. Blouch represented that the Company had "hit all of our follow-up deadlines with the FDA" and had "good, active dialogue with the FDA ... [s]o it is a work in process." *Id*. at ¶ 215.

The Court finds that this sampling of allegations, and the Amended Complaint viewed

as a whole, demonstrate that Defendants appreciated the gravity of the FDA's concerns, knew the risks facing the Company, yet downplayed and mischaracterized them in disclosures to the investing public.

Defendants argue that the non-fraudulent explanation for their compliance statements – "that they honestly believed they were making progress in their discussions with the FDA" – outweigh any fraudulent explanations. Thus, Defendants insist the Amended Complaint fails to allege the required "strong inference" of scienter. The Court does not agree.

The Amended Complaint sufficiently supports the inference that Defendants acted with knowledge or conscious disregard of the fraudulent nature of their representations of the Company's FDA compliance and of the adverse regulatory and legal consequences the Company was facing. Even if the Court were to accept, as equally compelling, the opposing inference that Defendants contend can reasonably be drawn from the Amended Complaint's allegations, their Motion to Dismiss must still be denied. *Tellabs*, 551 U.S. at 324.

**Loss causation**

Defendants also seek dismissal of the Amended Complaint for failure to demonstrate loss causation. Federal securities laws are intended to "maintain public confidence in the marketplace." See *United States v. O'Hagan*, 521 U.S. 642, 658 (1997). Particularly, they discourage fraud, "in part, through the availability of private securities fraud actions." *Randall v. Loftsgaarden*, 478 U.S. 647, 664 (1986). However, the PSLRA is not meant "to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 345 (2005); *Basic*, 485 U.S. at 252.

The Invacare Defendants argue that the Amended Complaint is deficient and does not allege that Defendants' purported misrepresentations or other fraudulent conduct proximately caused Plaintiff's economic loss.  In *Dura*, the allegation that plaintiffs "paid artificially inflated prices for Dura['s] securities' and suffered "damage[s]" was ruled inadequate and led to dismissal.  Here, Defendants insist that Plaintiff's claim that the Invacare stock value was inflated and then declined following "the disclosure of negative news" is equally insufficient to survive dismissal.  Plaintiff's loss must be caused by material facts about which Defendants lied.

Defendants contend that they neither lied, nor concealed, nor obscured the facts about Invacare's FDA compliance.  "Quite the opposite, Invacare had previously disclosed its on-going issues with the FDA and the possibility of a warning letter as early as February 26, 2010 (*see* 2009 Annual Report []), the possibility of systematic improvements as early as January 5, 2011 [], and the possibility of a consent decree as early as February 25, 2011 (*see* 2010 Annual Report [])."  (ECF DKT #36, p.34).

In Defendants' view, the revelations about which Plaintiff complains, i.e., the January 4, 2011 release of the Warning Letter; the October 27, 2011 announcement of Invacare's systemic improvements across its quality and regulatory systems; and the December 8, 2011 press release regarding the FDA's intention to seek a consent decree of injunction, were simply confirmatory of what was already known in the market — and thus, not actionable.

Finally, Defendants contend that the FDA's decision to issue the Warning Letter and to sue for an injunction against Invacare constituted an intervening cause of any alleged loss.

Upon consideration of the entire Amended Complaint and taking the factual

allegations as true, the Court finds that Plaintiff has sufficiently alleged loss causation as mandated by the PSLRA.

Unlike the complaint in *Dura*, the Amended Complaint sets forth that, **because** of Defendants' non-disclosures, falsehoods and mischaracterizations, the investing public was unaware of the full extent and severity of the FDA's issues with Invacare; and, **but for** Defendants' misrepresentations and omissions, Plaintiff and other Class Members would not have purchased Invacare stock or, at least, not at the inflated price.

Invacare's revelations, in the 2010 Annual Report for example, are not simply confirmatory. The 2010 Annual Report says that the FDA Warning letter was "related to documentation and procedures," "does not call into question the safety or efficacy of Invacare products," and "production has not been impacted." (ECF DKT #36-3 at I-23). In fact, despite Defendants' annual reports, financial statements, press releases and website commentary about addressing documentation issues, the Warning Letter cited patient complaints about Invacare's wheelchairs, bed rails and electronic bed control systems – calling some of Invacare's devices "adulterated" and "misbranded." (ECF DKT #34 at ¶¶ 185-186). Moreover, the Company's need to address FDA compliance issues resulted in the delay of new product development, acquisitions and opportunities for expansion. (ECF DKT #34 at ¶ 231). Future costs to the Company, and by extension, to the stockholders, would be significant, contrary to Defendant Blouch's assurances. "Since the end of the Class Period, Invacare has expended over $40 million and a far greater amount of internal resources to remediate compliance deficiencies ..." (ECF DKT #34 at ¶ 207).

In addition, just days after the Warning Letter, the FDA issued two more Form 483's

which were never mentioned in the positive-sounding, upbeat 2010 Annual Report.  (ECF DKT #34 at ¶ 195.  Again, this fact belies Defendants' argument that the revelations cited by Plaintiff were merely confirmatory of what was already known in the investing marketplace.

Moreover, the Amended Complaint meets the pleading standard for loss causation by identifying three discrete Invacare stock price drops: 4.5% upon the January 4, 2011 release of the Warning Letter; 4.3% upon the October 27, 2011 disclosure of system-wide improvements to quality and regulatory segments of the Company in response to FDA investigations; and 29% upon the December 8, 2011 press release revelation of the FDA Consent Decree of injunction, suspending normal operations at the Company's Taylor Street Facility and Corporate Headquarters.  (ECF DKT #34 at ¶¶ 235, 236, 237).

The Court concludes that Defendants' Motion to Dismiss on the grounds that loss causation is inadequately alleged is denied.

**Statute of Limitations**

Pursuant to 28 U.S.C. § 1658, a private securities action may be brought not later than the earlier of either:  (1) two years after the discovery of the facts constituting the violation; or (2) five years after such violation.  The limitations period "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation' – whichever comes first."  *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010).

Defendants assert that Plaintiff's claims for losses suffered in January 2011, related to the December 2010 Warning Letter, are untimely.  The original Complaint in this action was filed on May 24, 2013.  It was amended to substitute Lead Plaintiff on November 15, 2013. Defendants maintain that when Invacare issued the January 4, 2011 press release covering the

previous month's Warning Letter, "a diligent plaintiff would or should have been aware of all of the facts of any potential claim arising out of losses connected with the issuance of the Warning Letter.  Indeed, a diligent plaintiff would have reviewed the Warning Letter, and could have sought access to the publicly available Form 483s."  (ECF DKT #36, p.36).  So, Defendants argue, Plaintiff knew or should have known of this claim more than two years prior to filing the Complaint; and the statute of limitations is a bar.

However, whether Defendants acted with the requisite state of mind, i.e., scienter, is a "fact" for § 1658(b)(1) purposes; therefore, the limitations period does not begin to run until Plaintiff discovered or should have discovered that element of a Section 10(b) action.  *Merck*, 559 U.S. at 653; *Hawaii Ironworkers Annuity Trust Fund v. Cole*, 2011 WL 1257756, No. 3:10CV371, *15 (N.D.Ohio Mar. 31, 2011).

Plaintiff notes that sufficient scienter facts were not discoverable until December 2012.  Defendants' statements in the January 2011 press release and on the Company website downplayed and obscured the serious, pervasive nature of Invacare's FDA violations.  (ECF DKT #34 at ¶¶ 187, 190-191).  The FDA's findings on Invacare's knowledge of problems and reluctance to correct them was not available until the FDA's Complaint was filed in December 2012.  According to Plaintiff, numerous Confidential Witnesses were laid off around Christmas of 2012, and were not accessible for Plaintiff's investigation until after that time.  (ECF DKT #34 at ¶¶ 32, 37-39, 133, 274).

True enough, "a reasonably diligent plaintiff might have initiated an investigation," but the Invacare Defendants have not shown that a reasonably diligent plaintiff would have discovered facts sufficient to plead the key element of scienter before December 2012, such

that a motion to dismiss would be appropriate.  *See Hawaii Ironworkers*, 2011 WL 1257756 at *17.

**Section 20(a)**

When a primary violation of securities law is shown, Section 20(a) of the Securities and Exchange Act, 15 U.S.C. § 78t(a) imposes joint and several liability on "controlling persons."  *Omnicare I*, 583 F.3d at 947.  Defendant Blouch is the President and CEO of Invacare and Defendant Mixon is its Chairman, founder and former CEO.  Since the Court has found that Plaintiff has alleged an actionable claim for a violation of Section 10(b), and because Defendants have not denied that they are "controlling persons," Defendants' Motion to Dismiss Count II of the Amended Complaint is denied.

### III. CONCLUSION

For all these reasons, the Motion (ECF DKT #36) of Defendants to Dismiss the Amended Complaint Pursuant to Fed.R.Civ.P. 9(b) and 12 (b)(6) is denied.  Defendants shall file their Answers in accordance with Fed.R.Civ.P. 12(a)(4)(A).

**IT IS SO ORDERED.**

                                **s/ Christopher A. Boyko**
                                **CHRISTOPHER A. BOYKO**
                                **United States District Judge**

**Dated:  August 18, 2014**