**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

GOVERNMENT OF GUAM RETIREMENT
FUND, on Behalf of Itself and all Others
Similarly Situated,

              Plaintiff,

      v.

INVACARE CORPORATION, *et. al.*,

              Defendants.

Case No. 1:13-cv-1165-CAB

<u>CLASS ACTION</u>

JUDGE CHRISTOPHER A. BOYKO

**REPORT OF PARTIES' PLANNING MEETING**
**<u>UNDER FED. R. CIV. P. 26(f) AND LOCAL RULE 16.3(b)</u>**

Pursuant to the Court's August 29, 2014 Notice of Case Management Conference [ECF 49], the parties respectfully submit this Report of the Parties' Planning Meeting Under Fed. R. Civ. P. 26(f) and Local Rule 16.3(b).

The parties met and conferred telephonically on October 14, 2014.  The conference was attended by (a) Benjamin Galdston and David Kaplan of Bernstein Litowitz Berger & Grossmann LLP, counsel for Lead Plaintiff Government of Guam Retirement Fund and Court-appointed Lead Counsel for the proposed Class; and (b) Mitchell G. Blair and Fritz E. Berckmueller of Calfee, Halter & Griswold LLP, counsel for defendants Invacare Corporation ("Invacare" or the "Company"), Gerald B. Blouch, and A. Malachi Mixon, III (collectively, "Defendants").  The parties addressed the following matters during the conference:

1.      **Pre-Discovery Disclosures**:

        a.      **Lead Plaintiff's Position**.  Lead Plaintiff has fully complied with its obligations under Fed. R. Civ. P. 26(a) to provide to Defendants, without awaiting a discovery request, the name and contact information of each individual likely to have discoverable information (along with the subjects of that information), as well as copies of documents and information in Lead Counsel's possession, that Lead Plaintiff may use to support the claims in this action.  In addition, in advance of the parties' Rule 26(f) conference, on October 8, 2014, Lead Counsel produced to Defendants 1,497 documents pursuant to Rule 26(a)(1)(A)(ii), which were obtained from the U.S. Department of Health and Human Services pursuant to ongoing Freedom of Information Act ("FOIA") requests by Lead Counsel.

As noted above, the parties met and conferred telephonically pursuant to Rule 26(f) on October 14, 2014.  At the conference, the parties agreed to exchange initial disclosures pursuant to Rule 26(a)(1)(A) within ten (10) days of the conference (i.e., by October 24, 2014).  The following day, October 15, 2014, Lead Plaintiff served its initial disclosures on Defendants.  On October 28, 2014, Lead Plaintiff served Defendants with supplemental initial disclosures pursuant to Rule 26(a)(2)(E).

In contrast, Defendants have failed to provide Lead Plaintiff with their initial disclosures. Without seeking or obtaining prior authorization from the Court, Defendants further refuse to provide initial disclosures or respond to Lead Plaintiff's properly-served discovery.  Defendants should be compelled to provide initial disclosures forthwith and to respond to discovery.  To this end, on October 31, 2014, Lead Plaintiff filed its Motion To Compel Initial Disclosures And Discovery From Defendants [ECF No. 58] ("Motion to Compel").  As discussed in greater detail below, Defendants' refusal to provide their initial disclosures or to respond to discovery until after the resolution of Defendants' Motion For Judgment On The Pleadings Or In The Alternative, Motion For Reconsideration [ECF No. 55] ("JOP Motion"), filed October 23, 2014, is contrary to Defendants' obligations under the Court's prior Orders and the Federal and Local Rules.

       **b.**    <u>**Defendants' Position.**</u>  Defendants have not exchanged initial disclosures with Lead Plaintiff for the reason that discovery is stayed as explained below.

       **2.**    <u>**Complex Track**</u>:  The parties recommend the Complex Track.

       **3.**    <u>**e-Filing of Documents**</u>:  Pursuant to Local Rule 5.1(c) all documents must be electronically filed absent a showing of good cause.

       **4.**    <u>**Alternative Dispute Resolution (ADR)**</u>:  This case **is not** suitable for ADR at any time because the Lead Plaintiff asserts claims under the federal securities laws on behalf of itself and a class of similarly situated investors.

       **5.**    <u>**Magistrate Judge**</u>:  The parties do not consent to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

       **6.**    <u>**Modifications To The Number Of Interrogatories And Depositions**</u>:  At this time, the parties do not expect that it will be necessary for either side to exceed the ten (10) fact witness depositions per side limit under Federal Rule 30(a)(2)(A)(i), or the twenty-five (25) interrogatory per side limit under Federal Rule 33(a)(1).

7.    **Recommended Discovery Plan And Pretrial Schedule:**

a.    **Lead Plaintiff's Position:**

In accordance with Rule 26(d) and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), discovery in this action commenced on October 14, 2014, following the parties' Rule 26(f) conference.  Thus far, Lead Plaintiff has noticed the depositions of six (6) witnesses, including the deposition of Defendant A. Malachi Mixon III, to commence on November 12, 2014.  Lead Plaintiff has also served written discovery upon Defendants.  Specifically, Lead Plaintiff served its First Request for Production of Documents, First Set of Interrogatories, and First Set of Requests for Admission on Defendants with responses due on November 13, 2014.  Additionally, Lead Plaintiff has issued narrowly-tailored third-party document subpoenas to Quintiles and PRTM Management Consultants, Inc., which served as outside consultants to Invacare during the relevant period, with responses due on December 1, 2014.

Lead Plaintiff's discovery generally concerns the parties' claims and defenses.  In particular, Lead Plaintiff seeks discovery that is calculated to elicit evidence sufficient to satisfy Lead Plaintiff's burden to prove Defendants' violations of the federal securities laws and United States Securities and Exchange Commission ("SEC") rules at issue, and to establish that the action should be certified as a class action under Rule 23(a) and 23(b)(3).  For example, Lead Plaintiff seeks documents and testimony concerning Defendants' knowing and deliberately reckless issuance of materially false and misleading statements and omissions concerning Invacare's compliance with U.S. Food and Drug Administration ("FDA") regulations, including current Good Manufacturing Practices ("cGMP"), efforts undertaken to remediate the deficiencies, and the risk of adverse consequences to the Company as a result of its continued non-compliance.  Lead Plaintiff also seeks documents concerning Defendants' control over each other, the materiality of Defendants' misstatements, the market for Invacare common stock, and the Defendants' fraudulent scheme to manipulate the market price for Invacare common stock.

For the just, speedy and inexpensive resolution of this action in accordance with Rule 1, Lead Plaintiff requested that Defendants "front-load" their production of certain discrete

categories of patently relevant and discoverable documents that Defendants have already searched for, collected, reviewed for privilege, and produced or otherwise disclosed to adverse parties. By making an early production of these documents, Defendants would incur no or minimal burden, and the review and analysis of these documents would enable Lead Counsel to streamline and narrow document discovery in this litigation. The documents requested for Defendants' initial production include:

- Documents and communications provided to or received from the FDA, United States Department of Justice ("DOJ"), and other government entities concerning Invacare's compliance with the U.S. Federal Food, Drug, and Cosmetic Act ("FDCA") and FDA regulations, including the FDA's Complaint For Permanent Injunction and the Consent Decree For Permanent Injunction ("Consent Decree"), filed on December 20, 2012, in *United States of America v. Invacare Corp., et al.*, 12-cv-03086-DAP (N.D. Ohio);

- Documents produced by the parties in the consolidated shareholder derivative litigation, *In re Invacare Derivative Litigation*, No. 12-cv-00259 (N.D. Ohio), which the Company settled in 2012 and, as a material term of the settlement, agreed to implement corporate governance reforms and enhancements concerning Invacare's FDA regulatory compliance; and

- Documents and communications generated in connection with internal or external investigations or audits conducted by or at the direction of the Company concerning Invacare's FDA regulatory compliance, compliance reporting processes, and quality control systems.

Similarly, to efficiently prepare this case for trial within approximately one year, Lead Plaintiff proposes the following pre-trial schedule:

| Event | Date |
|---|---|
| Rule 26(f) Conference/Commencement of Discovery | October 14, 2014 |
| Substantial completion of Defendants' document productions | February 13, 2015 |
| Cut-off date for amending pleadings and/or adding new parties | February 13, 2015 |
| Identify experts and areas of expert opinion | February 27, 2015 |

| Event | Date |
|-------|------|
| Identify rebuttal experts | March 13, 2015 |
| Fact discovery cut-off | April 17, 2015 |
| Exchange expert reports | April 30, 2015 |
| Class certification motion due | April 30, 2015 |
| Exchange rebuttal expert reports | May 21, 2015 |
| Expert discovery cut-off | June 5, 2015 |
| Dispositive motions due | June 25, 2015 |
| *Daubert* motions due | September 10, 2015 |
| *In limine* motions due | September 24, 2015 |
| Status Hearing/Settlement Conference | October 1, 2015 |
| Trial | October __, 2015 |

Lead Plaintiff understands that Defendants request that the Court adopt their alternative proposed pre-trial schedule "bifurcating" discovery in this matter as between "class certification discovery," which Defendants contend should occur first, and "merits discovery," which Defendants contend should occur only after the Court has determined whether to certify this action as a class action under Rule 23. Without seeking or obtaining prior authorization of the Court, Defendants have unilaterally imposed a *de facto* discovery stay and failed and refused to provide initial disclosures or respond to Lead Plaintiff's properly-served discovery.

As set forth briefly below, Lead Plaintiff opposes any "bifurcation" of discovery as Defendants' proposal is both baseless and antithetical to Rule 1. First, Defendants' proposed schedule contemplates nearly one year of proceedings devoted exclusively to class certification. Defendants' only justification is their unsupported speculation that denial of class certification

will terminate this action. Defendants are wrong. Even accepting Defendants' position that class certification is inappropriate in this quintessential securities fraud action asserting claims under Section 10(b) of the 1934 Securities Exchange Act based on open market purchases of Invacare common stock, the litigation will still proceed on Lead Plaintiff's individual claims, as well as claims of any other prospective class member that chooses to bring suit individually.

Second, having satisfied the "exacting pleading requirements" of the Federal Rules and the PSLRA, *see Gov't of Guam Ret. Fund v. Invacare Corp.*, 2014 WL 4064256, at *4 (N.D. Ohio Aug. 18, 2014) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007)), Lead Plaintiff is entitled to take discovery to adduce evidence in support of its federal securities fraud claims. Neither the PSLRA nor the Congressional record indicates any intent by Congress to create an additional statutory discovery stay pending class certification, or for that matter, any other procedural stages of the case.

Third, delaying "merits" discovery for at least approximately one year, as Defendants' proposed schedule provides, causes unnecessary delay and undue prejudice to Lead Plaintiff and Class members, as memories fade and documents and witnesses disperse. As but one example, Lead Plaintiff has noticed the deposition of Defendant A. Malachi Mixon, III, for November 12, 2014, because Lead Counsel understands from news reports that Mr. Mixon's health continues to decline after he suffered a stroke in 2010, following which Mr. Mixon resigned as Chief Executive Officer of Invacare. Lead Plaintiff and the Class should not be forced to put off "merits" discovery simply because Defendants believe they have an additional challenge to class certification. Instead, the more sensible and supported approach is to permit all discovery to proceed in an orderly and conventional fashion so that this case can be ready for trial within approximately one year under Lead Plaintiff's proposed schedule.

Fourth, Defendants' bifurcation proposal is ***not*** supported by the overwhelming weight of authority, as they contend.[1]  As the court in *Central Transport International, Inc. v. General Electric Co.*, No. 08CV136, 2008 WL 4457707 (W.D. N.C. Sept. 30, 2008), stated, "***bifurcation of discovery is the exception, rather than rule***, and it is clear that in most instances, regular – that is, ***unbifurcated – discovery is more efficient***.[2]  Numerous authorities recognize that, "the distinction between merits-based discovery and class-related discovery is often blurry, if not spurious." *In re Plastics Additives Antitrust Litig.*, No. 03-2038, 2004 WL 2743591, at *3 (E.D. Pa. Nov. 29, 2004) (citing MANUAL FOR COMPLEX LITIGATION § 21.14, at 255 ("generally, application of the Rule 23 criteria requires the judge to examine the elements of the parties' substantive claims and defenses in order to analyze commonality, typicality, and adequacy of representation under Rule 23(a)")).  Indeed, "discovery relating to class certification is closely enmeshed with merits discovery" and "cannot be meaningfully developed without inquiry into basic issues of the litigation."  *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 41 (N.D. Cal. 1990).  Here, not only will bifurcation and Defendants' proposed schedule prolong the case indefinitely, but the Court will be forced in the meantime to contend with endless disputes over what constitutes "merits" versus "class" discovery making bifurcation "unworkable."  *See In re*

---

[1] Tellingly, Defendants' cited authorities do not address the circumstances present here, where Defendants seek ***partial*** reconsideration or judgment on the pleadings as to only a ***subset*** of the numerous actionable misstatements the Court sustained in its August 18, 2014 Order denying Defendants' motion to dismiss in its entirety.  As explained more fully in Lead Plaintiff's Motion to Compel, courts refuse to stay discovery under such circumstances where a complaint has been sustained and a defendant's subsequent motion for reconsideration or judgment on the pleadings by its own admission cannot completely dispose of the action.  Lead Counsel is not aware of any authority to the contrary and Defendants cite none.

[2] *Id.* at *3 (emphasis added) citing *Belk, Inc. v. Meyer Corp.*, No. 07-CV-168, 2008 WL 2704792, at *2 (W.D.N.C. July 7, 2008) (denying motion for bifurcated discovery in favor of a "regular discovery period that would allow for a more efficient process"), *Carver v. Velocity Express Corp.*, No. 07 CV 407, 2008 WL 2079819, at *2 (W.D.N.C. May 15, 2008) (concluding that bifurcated discovery would be less efficient), and *Classen Immunotherapies, Inc. v. King Pharms., Inc.*, 403 F. Supp. 2d 451, 461 (D. Md. 2005) (bifurcation of discovery "would not further judicial economy").

7

*Semgroup Energy Partners, L.P., Sec. Litig.*, No. 08-MD-1989, 2010 WL 5376262, at *2-3 (N.D. Okla. Dec. 21, 2010) ("An order restricting discovery to class issues would be impracticable because of the closely linked issues, and inefficient because it would be certain to require ongoing supervision of discovery.")

Recognizing that bifurcation inevitably leads to disputes, delay, inefficiencies and unnecessary burden, courts typically require a party seeking bifurcation to make a ***prima facie showing their likelihood of prevailing not only in defeating class certification but in disposing of the case altogether***. *See*, *e.g.*, *Semgroup*, 2010 WL 5376262, at *2-3 (merits discovery during the precertification stage "is generally more appropriate for cases that are large and likely to continue even if not certified"); *New England Carpenters Health & Welfare Fund v. Abbott Labs.*, No. 12 C 1662, 2013 WL 690613, at *3-4 (N.D. Ill. Feb. 20, 2013) (a party seeking to limit discovery has the burden of showing "good cause" and "courts have insisted on a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements"). Defendants' own cited authorities support this requirement and undermine their arguments.[3] Here, Defendants cannot make any such showing for numerous reasons. As an

---

[3] *Phillips v. Phillip Morris Cos.*, Case No. 10-cv-1741, 2013 U.S. Dist. LEXIS 91189, at *7-9 (N.D. Ohio June 28, 2013) (Lioi, J.), cited by Defendants, provides no support for their arguments and actually illustrates why bifurcation is inappropriate and unworkable in this action. First, the decision follows a lengthy procedural history in which the action was originally consolidated with multi-district litigation ("MDL") proceedings in the District of Maine, the Maine court issued an opinion denying class certification in exemplar cases, and the case was remanded back to the Northern District of Ohio after the First Circuit denied interlocutory review. *Phillips v. Phillip Morris Cos.*, 289 F.R.D. 355, 359 (N.D. Ohio 2014) (Lioi, J.). Against this background, the plaintiff apparently consented to address class certification first; however, the court subsequently contended with serial disputes over the distinction between "class" and "merits" discovery as a result. *See*, *e.g.*, *Phillips*, 2013 U.S. Dist. 74150 (N.D. Ohio May 24, 2013). Finally, under the unique circumstances of the case, where class certification had been denied in numerous prior similar cases, including in exemplar MDL cases, bifurcation was appropriate. *See Phillips*, 289 F.R.D. at 362 (denying class certification and noting that "the majority" of courts considering similar claims – "including every federal court that has been asked to consider certification under Fed. R. Civ. P. 23 – has rejected class certification."). Critically, **none** of the unique circumstances presented in the *Phillips* tobacco litigation are present here. Indeed, in contrast to the claims asserted in that litigation, the instant federal securities claims present ideal claims for class treatment under Rule 23, as innumerable courts in

initial matter, it is widely recognized that federal securities fraud claims asserting a fraud-on-the-market theory present prototypical cases suited for class treatment under Rule 23(b)(3).  *See* 7AA Wright, Miller, Kane, Marcus & Steinman, Federal Practice and Procedure  § 1781.1 (3d ed.) ("Rule 23(b)(3) has been used quite frequently in cases involving securities frauds"). Indeed, Invacare's common stock trades on the New York Stock Exchange, which courts uniformly hold is ***per se*** an efficient market entitling investors to a class-wide presumption of reliance.  *See*, *e.g.*, *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 183 (S.D.N.Y. 2008) ("no argument could be made that the New York Stock Exchange is not an efficient market") (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 249 n.29 (1988)).

Fifth, Defendants provide no explanation why the fraud-on-the-market presumption of reliance – which the Supreme Court soundly reaffirmed this year in *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2417 (2014) ("*Halliburton II*") – does not apply here.  As the Supreme Court explained in *Halliburton II*, "there is no reason to think that these questions [regarding an individual plaintiff's reliance on the integrity of the market price] will overwhelm common ones and render class certification inappropriate under Rule 23(b)(3)." *Id.*  Nor do Defendants explain why damages questions defeat certification.  *See* Federal Practice and Procedure, *supra*, at § 1781.1 ("[D]ifferences in the amount of damages being claimed by each member will not cause the class action to fail.").

Sixth, Defendants' contention that Lead Plaintiff cannot be a fair and adequate class representative given that "Lead Plaintiff sold all of its Invacare stock in the three days prior to the largest loss alleged in the Amended Complaint" is also belied by case law.  *See*, *e.g.*, *In re Diamond Foods, Inc., Sec. Litig.*, 295 F.R.D. 240, 255 (N.D. Cal. 2013) (finding that proposed class representative's sale of shares prior to the end of the class period did not render it atypical and noting "***this argument . . . has been rejected by the majority of judges***, including the

---

the Sixth Circuit and throughout the country have held in similar open-market securities fraud cases.

undersigned") (emphasis added); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 256 F.R.D. 586, 596 (N.D. Ill. 2009) ("As other courts have recognized, the fact that certain class members sold at a time when the stock price was still allegedly inflated does not necessarily negate all loss, and regardless, it will not generally defeat commonality or predominance."); *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 48 (D.D.C. 2006) (rejecting argument that proposed class representative was not adequate and typical because he bought and sold before the end of the class period, and noting that contra-authority has "not been well received by other courts which have almost universally attacked its reasoning"); *In re Scott Paper Co. Sec. Litig.*, 142 F.R.D. 611, 616 (E.D. Pa. 1992) (proposed class representative who sold all shares before single alleged corrective disclosure "raises claims which are typical of all class members and he is an adequate representative").  Contrary to Defendants' contention, Lead Plaintiff and the class are "unified by an interest in proving the same common course of conduct regarding Diamond's allegedly fraudulent misrepresentations."  *Diamond Foods*, 295 F.R.D. at 255; *see also Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 967 F. Supp. 2d 1143, 1163 (N.D. Ohio 2013) ("A plaintiff's claim is typical 'if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'") (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1082 (6th Cir. 1996)).  In short, when considering bifurcation, "[i]t is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 2388 (2d ed. Pocket part, 2006).  Here, Defendants' "preference" that merits discovery be postponed indefinitely is insufficient to warrant bifurcating discovery, particularly when balanced against the gross inefficiencies, delay and unnecessary burden that will result from the inevitable disputes over what constitutes "class" versus "merits" discovery, and the resulting prejudice and adverse due process consequences for Lead Plaintiff and the Class.

Additionally, on October 23, 2014, Defendants filed their JOP Motion.  On October 30, 2014, Lead Plaintiff filed its Opposition to Defendants' JOP Motion [ECF No. 57].  As related to

discovery, Defendants' JOP Motion and additional communications state that, without first seeking or obtaining prior authorization of the Court, Defendants refuse to provide their initial disclosures or otherwise respond to Lead Plaintiff's discovery that was properly served ***before*** Defendants filed their JOP Motion.  In response, on October 31, 2014, Lead Plaintiff filed its Motion to Compel.  Lead Counsel will be prepared to address these issues with the Court more fully during the November 7, 2014 Case Management Conference.

Finally, Lead Plaintiff recognizes the requirements set forth in the Court's August 29, 2014 form Notice of Case Management Conference [ECF No. 49] directs Lead Plaintiff to "provide Defendants with a written demand to include a description and monetary breakdown of the damages claimed no later than one week prior to the date of the Status Conference."  Lead Plaintiff respectfully submits that such a written demand is premature at this time.  As is typical in complex securities fraud class actions asserting claims based on artificial price inflation, damages in this action will be the subject of expert analyses and testimony to be determined with the benefit of a complete record after the parties have had sufficient opportunity for full discovery.  Discovery has only recently commenced and Lead Plaintiff's proposed pretrial schedule provides the parties with sufficient time for full discovery, and includes dates for the orderly exchange of expert information and reports in accordance with the Federal and Local Rules.  Nevertheless, the Amended Complaint satisfies the substantive requirements for a description and monetary breakdown of the damages claimed.  The Amended Complaint makes clear that Lead Plaintiff intends to seek all damages from Defendants as available under the federal securities laws, as well as the reasonable costs and expenses incurred in this action, including attorney fees and expert fees.  The Amended Complaint further provides Defendants with notice of the scope of potential damages in this action, alleging that Defendants' fraud caused approximately $177,000 in losses on Lead Plaintiff's Class Period purchases of Invacare common stock and approximately $251 million in market capitalization losses incurred by class members.  As of the date of this report, Defendants have not made any offer upon Lead Plaintiff.

b.  **Defendants' Position:**

As an initial matter, Defendants must respond to Lead Plaintiff's suggestion that Defendants are "obstructionist" and engaged in "self-help" as Lead Plaintiff has done on multiple occasions, including in the improper and unnecessary Motion to Compel which Lead Plaintiff filed on October 31st.  Throughout, Defendants have only asked that they be allowed the protections of the law, including the PSLRA, Rule 26 and the orders of this Court, as they apply to discovery.  Lead Plaintiff constantly demands that Defendants waive those protections.  First, Lead Plaintiff pushed Defendants to ignore the PSLRA's stay of discovery during the pendency of Defendants' initial motion to dismiss.  It then pushed for discovery to proceed prior to any meet and confer and without giving Defendants reasonable time to even answer the 132 page Amended Complaint.  It is attempting to unilaterally impose its plan to start discovery on the merits, as opposed to the bifurcated approach favored by Defendants and discussed further below, by forcing the clock to run on its voluminous discovery requests and subpoenas without giving the Court any opportunity to consider the parties' different positions.  And Lead Plaintiff has now filed a Motion to Compel against Defendants, objecting to the continuation of the stay and bifurcated discovery, despite Defendants' request that the parties discuss these matters further with the Court at the Case Management Conference, despite its own position in a subsequent draft planning report that it would do so, and despite the fact that, other than the initial disclosures, none of its other discovery is even yet due for any response.  Lead Plaintiff is attempting to turn Defendants' refusal to waive legal protections into evidence of misconduct and should not be allowed to do so.

Lead Plaintiff seeks to blame Defendants for delays in this case.  While nearly three years have passed since the close of the purported class period in December 2011, a year and half of that time was spent waiting for any purported plaintiff to file a complaint, another half year was spent by Lead Plaintiff's counsel switching clients and amending their complaint, which they did not file, at their own request, until November 15, 2013, and then another 9 months was spent briefing and resolving the motion to dismiss.  Defendants have only asked for a little over 2

months of this 3 years to answer the Amended Complaint, prepare to meet and confer and then wait for the Case Management Conference to set up a schedule for the case.

Defendants still believe that the appropriate and reasonable course is to raise all discovery issues with the Court during the Case Management Conference, rather than in a premature and separately tracked Motion to Compel, and move forward then as necessary based on the Court's decisions. This could include further briefing from the parties, as Lead Plaintiff suggested in its draft planning report submitted to Defendants on October 29th, but not in the posture of a Motion to Compel as is being forced by Lead Plaintiff, as that posture puts all of the risk on Defendant should these good faith, legal disputes be resolved against them.

### 1. All Discovery Should be Currently Stayed under the PSLRA due to Defendants' Motion for Judgment on the Pleadings/Reconsideration

It is Defendants' well-supported position that the automatic stay of discovery under the PSLRA should remain in effect in this matter as a result of the Motion for Judgment on the Pleadings/Motion for Reconsideration filed by Defendants on October 23 (the "Motion"). Whether the Court analyzes Defendants' Motion as one for judgment on the pleadings or reconsideration, the discovery stay set forth by the PSLRA applies to stay discovery in this case until after the Court determines the scope of Lead Plaintiff's Amended Complaint that survives dismissal. *See* 15 U.S.C. § 78u-4(b)(3)(B). Federal courts have overwhelmingly held that Rule 12(c) motions should be treated like motions to dismiss in this context. *See*, *e.g.*, *Petrie v. Elec. Game Card, Inc.*, No. 12-55620, 2014 U.S. App. LEXIS 14736 at *23, n. 11 (9th Cir. July 30, 2014) ("We therefore assume the PSLRA discovery stay provision is triggered by a motion for judgment on the pleadings in the same manner it is triggered by a motion to dismiss."); *Gardner v. Major Auto. Cos.*, No. 11-CV-1664, 2012 U.S. Dist. LEXIS 51821, **10-11 (E.D.N.Y. April 12, 2012) ("A Rule 12(c) motion is a 'motion to dismiss' within the meaning of the PSLRA automatic stay provision, and . . . therefore the stay is triggered by defendants' Rule 12(c) motion."). Similarly, federal courts have also held that the PSLRA discovery stay remains in

effect during the pendency of a motion for reconsideration, since the sufficiency of the complaint is still being tested. *See, e.g. Powers v. Eichen*, 961 F. Supp. 233, 236 (S.D. Cal. 1997). Therefore, discovery in this matter should currently remain stayed until after the Motion is resolved and the Court lifts the stay.

Lead Plaintiff has just filed a Motion to Compel, targeted in part at the application of the stay. If Lead Plaintiff was willing to submit this issue of the stay to the Court for resolution, as it suggested in its draft planning report submitted to Defendants on October 29th, then it should have waited until afterwards if at all to file this Motion to Compel, as there is the potential that the Motion could be completely moot as to the issue of the stay. Briefing a disputed legal issue is far different than filing a motion to compel, which is why the Local Rules require the parties to proceed in measured steps as to discovery disputes, rather than rushing to the extreme as Lead Plaintiff has done here. Defendants will respond to the Motion to Compel per the rules, as they now must, but also believe that the costs of responding could have been avoided had Lead Plaintiff simply waited to resolve the issue at the Case Management Conference.

> **2. To the Extent Discovery Moves Forward after Resolution of Defendants' Motion for Judgment on the Pleadings/Reconsideration, the Court Should Bifurcate Discovery into Class Certification and Merits Stages**

If, after resolving Defendants' Motion, the Court decides that discovery should move ahead, Defendants propose that the Court should first focus on class certification issues, and thus set a case schedule which addresses class certification first, both for discovery and motion practice. Staging, or bifurcating, the case schedule and limiting pre-certification discovery is mandated by the plain language of Rule 23(c)(1)(A), the attendant Advisory Committee notes, and case law. The 2003 amendment of Rule 23 requires a court to determine certification "as early as practicable," and presumes that pre-certification discovery will be managed and limited. Moreover, the annotations to Federal Rule 23 provide that before a ruling on class certification, a plaintiff is entitled to discovery of information limited to that "relevant to make the certification

decision on an informed basis."  Fed. R. Civ. P. 23 Adv. Comm. Notes (2003) "[A]n evaluation of the probable outcome on the merits is not properly part of the certification decision."  *Id*.

Indeed, the majority of federal courts, including those in the Sixth Circuit, have held that while some discovery is necessary prior to a determination of class certification, defendants must be protected from discovery which is overly burdensome, irrelevant, or which invades privileged or confidential areas, and that "***discovery on the merits should not be had prior to [resolution of] the pre-certification issue***." *See Phillips v. Philip Morris Cos*., Case No. 10-cv-1741, 2013 U.S. Dist. LEXIS 91189, 7-9 (N.D. Ohio June 28, 2013) (emphasis added); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("[n]othing in either the language or history of Rule 23 . . . gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action."); *Weathers v. Peters Realty Corp*., 499 F.2d 1197, 1201 (6th Cir. 1974) (holding that "the district court must confine itself to the requirements of Rule 23 and not assess the likelihood of success on the merits"); *In re Hydrogen Peroxide Antitrust Litig*., 552 F.3d 305, 317 (3d Cir. 2008) ("the Third Circuit has reaffirmed its prior holding . . . to preclude a merits inquiry that is not necessary to a Rule 23 determination."); *Stewart v. Winter*, 669 F. 2d 328, 331 (5th Cir. 1982) ("In light of the mandate of Rule 23(c)(1) . . . we think it imperative that the district court be permitted to limit pre-certification discovery to evidence that, in its sound judgment, would be 'necessary or helpful' to the certification decision."); *Burstein v. Applied Extrusion Tech., Inc.*, 153 F.R.D. 488, 491 (D. Mass. 1994) (requirement that class certification a decision is to be made "as soon as practicable . . . seems to indicate the extensive discovery respecting the underlying merits of a plaintiff's claim should not be part of the litigation at the class certification stage."); *Smith v. Dominion Bridge Corp*., No. 96-7580, 2007 U.S. Dist. LEXIS 26903 at *4 (E.D. Pa. Apr. 11, 2007) (noting that court bifurcated class discovery from merits discovery, resulting in defendants' responses to plaintiff's merits discovery being stayed until the class was certified); *Barasich v. Columbia Gulf*, No. 05-4161, Disclosure and Order (Dkt. No 18) (Jan. 17, 2006) and Pretrial Order #2 (Dkt. 27) (Feb. 6, 2006) (E.D. La.) (staying all discovery pre-certification, excepting an agreed

class certification discovery plan); *In re Merscorp Inc*., MDL Docket No. 1810, 2008 U.S. Dist. LEXIS 8714 at *7 (S.D. Tex. Feb. 6, 2008) (noting that initial stage of discovery was limited to class certification and striking requests for production that seek documents not related to class certification); *Lawrence E. Jaffe Pension Plan v. Household Int'l, Inc*., No. 02-5893, 2004 U.S. Dist. LEXIS 18993 at *4 (N.D. Ill.Sept. 20, 2004) (noting that discovery in PSLRA securities fraud suit was "bifurcated, with class discovery preceding merits discovery).

Further, Lead Plaintiff's counsel's law firm has litigated matters in which class certification and merits discovery were bifurcated. *See, e.g., In re Stone Energy Corp*., No. 05-2088, Order (Dkt. No. 137) (W.D. La. Mar. 14, 2008) ("After considering the arguments of counsel and the memorandum filed in connection with the hearing, for oral reasons assigned, the Court will bifurcate the class certification and merits discovery in this case."); *Jones, et al. v. Ford Motor Credit*, No. 00-08330, Memorandum and Order (Dkt. 51) (S.D. NY June 19, 2002) ("[A]fter consideration of the parties' arguments, on the issue, the Court concludes that discovery should be bifurcated; discovery relating to class certification to proceed first. . .")

Here, Defendants are confident that class certification will be denied, and such denial will, as a practical matter, bring this litigation to an end.  Lead Plaintiff has purported to define a class that spans nearly 3 years, involves more than thirty alleged misrepresentations with separate and potentially conflicting impacts on the shares, and includes current and former employees of Invacare, perhaps even the confidential witnesses it quotes in the Amended Complaint.  On specific legal issues, among others, Defendants anticipate denying that questions of law or fact common to class members predominate, particularly with respect to reliance on an efficient market and damages, and denying that Lead Plaintiff's claims are typical or that Lead Plaintiff could be a fair and adequate class representative.  Other issues may arise during the course of class certification discovery that would support additional challenges to certification. Accordingly, limiting discovery before a class certification motion to information relevant to certification is fully consistent with the rules regarding class actions, is supported by the overwhelming weight of authority, and is the most efficient use of this Court's – and the parties'

– resources. Bifurcating discovery imposes no hardship on either party; each remains free to conduct appropriate merits discovery, if necessary, after the Court decides the scope of the case.

Defendants agree with Lead Plaintiff's suggestion in its draft planning report submitted to Defendants on October 29th that this issue might be better explored on briefs and is willing to submit further papers on a calendar set by the Court. Defendants specifically request an opportunity to respond to the arguments raised by Lead Plaintiff in the part of its Motion to Compel directed at the issue of bifurcation. But, Defendants are at a loss to understand why Lead Plaintiff included those arguments in the Motion to Compel, knowing that the Court would be hearing these issues at the Case Management Conference in just 6 more days, potentially mooting its argument, and knowing that there is nothing right now that Defendants can be compelled to do with regard to their stance on bifurcation. Again, Defendants ask that to the extent the Court requests further briefing, that it proceed outside of the posture of the Motion to Compel.

### 3. Defendants' Proposed Case Schedule for Amendments and Addressing Class Certification

(all dates are estimated from the date of the resolution of the Motion for Judgment on the Pleadings/Reconsideration)

| Event | Date |
|---|---|
| Cut-off date for amending or adding parties | plus 1 month |
| Plaintiff to file motion for class certification, with expert; class certification discovery to begin | plus 2 months |
| Discovery regarding certification issues only to be completed, including discovery and deposition re: Plaintiff's expert | plus 6 months |
| Defendant to file opposition to class certification, with expert, also including *Daubert* motions; limited discovery regarding defendants' experts to begin | plus 7 months |
| Discovery and deposition re: Defendant's expert complete | plus 8 months |

| Event | Date |
|---|---:|
| Plaintiff to file reply to class certification, including *Daubert* | plus 9 months |
| Defendant to file opposition to any *Daubert* or like | plus 10 months |
| Status Hearing | plus 11 months |

Respectfully submitted,

Dated:  November 4, 2014

/s/ Benjamin Galdston

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**
Blair A. Nicholas (admitted *Pro Hac Vice*)
Benjamin Galdston (admitted *Pro Hac Vice*)
David R. Kaplan (admitted *Pro Hac Vice*)
12481 High Bluff Drive, Suite 300
San Diego, California 92130
Telephone: (858) 793-0070
Facsimile:  (858) 793-0323

*Counsel for Lead Plaintiff the Government of
Guam Retirement Fund and Lead Counsel for
the Class*

**CLIMACO, WILCOX, PECA,
    TARANTINO & GAROFOLI CO., LPA**
John R. Climaco (0011456)
Scott D. Simpkins (0066775)
55 Public Square, Suite 1950
Cleveland, Ohio 44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632

*Local Counsel for Lead Plaintiff the
Government of Guam Retirement Fund*

Dated: November 4, 2014                    /s/ Mitchell G. Blair

**CALFEE, HALTER & GRISWOLD LLP**
Mitchell G. Blair (0010892)
Fritz E. Berckmueller (0081530)
Eric S. Zell (0084318)
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114
Telephone: (216) 622-8200
Facsimile: (216) 241-0816

*Counsel for Defendants, Invacare*
*Corporation, Gerald B. Blouch, and A.*
*Malachi Mixon, III*

19

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was filed electronically this 4th day of November, 2014.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Benjamin Galdston*
Benjamin Galdston
