UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DISTRICT

GOVERNMENT OF GUAM
RETIREMENT FUND, *et al.,*

        Plaintiff,

    vs.

INVACARE CORPORATION, *et al.,*

        Defendants.

Case No. 1:13CV1165

JUDGE CHRISTOPHER A. BOYKO

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
<u>OF LEAD PLAINTIFF'S MOTION FOR CLASS CERTIFICATION</u>**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................. ii

I.    INTRODUCTION ................................................................................1

II.   SUMMARY OF THE ACTION ..........................................................3

      A.    The Proposed Class Representative ..........................................3

      B.    Nature Of The Action ..............................................................4

III.  ARGUMENT .......................................................................................5

      A.    Class Certification Standards ...................................................5

      B.    The Requirements Of Rule 23(a) Are Satisfied .......................6

            1.    Numerosity Is Established ...............................................6

            2.    Commonality Is Established .............................................6

            3.    Guam's Typicality Is Established .....................................7

            4.    Guam's Adequacy Is Established ......................................8

      C.    The Requirements Of Rule 23(b) Are Satisfied .......................9

            1.    Common Questions Predominate .....................................10

                  (a)    Invacare Stock Trades On A Presumptively
                         Efficient Market ...................................................11

                  (b)    The *Cammer* Factors Confirm Market
                         Efficiency ...........................................................12

                  (c)    Reliance Is Presumed Under *Affiliated Ute* ..................13

            2.    Class-Wide Damages Are Measureable ............................14

            3.    A Class Action Is A Superior Method Of
                  Adjudicating Lead Plaintiff's Claims ...............................14

II.   CONCLUSION ...................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*In re Accredo Health, Inc. Sec. Litig.*,
   2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006) ....................................................2

*Adams v. Anheuser-Busch Cos.*,
   2012 U.S. Dist. LEXIS 42364 (S.D. Ohio Mar. 28, 2012) ....................................................7

*Affiliated Ute Citizens of Utah v. United States*,
   406 U.S. 128 (1972)..........................................................................................................13, 14

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)..........................................................................................................10, 11

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*,
   133 S. Ct. 1184 (2013)............................................................................................... passim

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)...................................................................................................10, 11, 12

*Beattie v. CenturyTel, Inc.*,
   511 F.3d 554 (6th Cir. 2007) ..............................................................................................10

*Billhofer v. Flamel Techs., S.A.*,
   281 F.R.D. at 159-160...........................................................................................................11

*Bovee v. Coopers & Lybrand*,
   216 F.R.D. 596 (S.D. Ohio 2003) ..............................................................................11, 12, 13

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) .........................................................................................12

*Castillo v. Envoy Corp.*,
   206 F.R.D. 464 (M.D. Tenn. 2002) ....................................................................................10

*Cates v. Cooper Tire & Rubber Co.*,
   253 F.R.D. 422 (N.D. Ohio 2008) .......................................................................................7

*City of Livonia Emp. Ret. Sys. v. Wyeth*,
   2012 WL 4086474 (S.D.N.Y. Sept. 18, 2012)....................................................................14

*In re Computer Sci. Corp. Sec. Litig.*,
   288 F.R.D. 112 (E.D. Va. 2012)..........................................................................................11

*In re Direct Gen. Corp.*,
2006 WL 2265472 (M.D. Tenn. Aug. 8, 2006) ....................................................15

*Eisen v. Carlisle & Jacquelin*,
417 U.S. 156 (1974)...........................................................................................5

*Erica P. John Fund, Inc. v. Halliburton Co.*,
131 S. Ct. 2179 (2011)......................................................................................3

*Freeman v. Laventhol & Horwath*,
915 F.2d 193 (6th Cir. 1990) ...................................................................3, 11, 12

*Halliburton Co. v. Erica P. John Fund, Inc.*,
134 S. Ct. 2398, 189 L. Ed. 2d 339 (2014)..............................................3, 11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..........................................................................15

*Kelleher v. ADVO, Inc.*,
2009 WL 2413362 (D. Conn. Mar. 27, 2009) .......................................................12

*La Mar v. H&B Novelty & Loan Co.*,
489 F.2d 461 (9th Cir. 1973) ............................................................................10

*Lapin v. Goldman Sachs & Co.*,
254 F.R.D. 168 (S.D.N.Y. 2008) .......................................................................12

*Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.*,
967 F.2d 742 (2d Cir. 1992)..............................................................................13

*Lumen v. Anderson*,
280 F.R.D. 451 (W.D. Mo. 2012).......................................................................12

*McIntire v. China MediaExpres Holdings, Inc.*,
2014 WL 4049896 (S.D.N.Y. Aug. 15, 2014)......................................................14

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
2013 WL 396117 (D.N.J. Jan. 30, 2013) .......................................................11, 12

*In re Michael J. Burns; Robert C. Richter*,
No. 13-0305, ECF No. 19-2 (6th Cir. Dec. 12, 2013) .............................................5

*Michigan State Univ. Faculty Ass'n v. Michigan State Univ.*,
93 F.R.D. 54 (W.D. Mich. 1981).........................................................................6

*In re NYSE Spec. Sec. Litig.*,
405 F. Supp. 2d 281 (S.D.N.Y. 2005)..................................................................12

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ..................................................................15

*In re PHP Healthcare Corp.*,
   128 F. App'x 839 (3d Cir. 2005) ..................................................................3

*Plumbers & Pipefitters Nat'l Pension Fund v. Burns*,
   292 F.R.D. 515 (N.D. Ohio 2013) ..................................................................2

*Plumbers & Pipefitters Nat. Pension Fund v. Burns*,
   967 F. Supp. 2d 1143 (N.D. Ohio 2013)........................................................12, 13

*Powers v. Hamilton Co. Public Defendant Comm'n*,
   501 F. 3d 592 (6th Cir. 2007) ..................................................................10

*Putnam v. Davies*,
   169 F.R.D. 89 (S.D. Ohio 2006) ..................................................................7

*Ross v. Abercrombie & Fitch Co.*,
   257 F.R.D. 435 (S.D. Ohio 2009) .......................................................... passim

*Salvagne v. Fairfield Ford, Inc.*,
   264 F.R.D. 321 (S.D. Ohio 2009) ..................................................................10

*Senter v. Gen. Motors Corp.*,
   532 F.2d 511 (6th Cir.1976) ..................................................................6

*Sprague v. Gen. Motors Corp.*,
   133 F.3d 388 (6th Cir.1998) (en banc) ..................................................................8

*Swigart v. Fifth Third Bank*,
   288 F.R.D. 177 (S.D. Ohio 2012) ..................................................................6, 8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)..................................................................2, 10

*In re U.S. Foodservice Inc. Pricing Litig.*,
   729 F.3d 108 (2d Cir. 2013)..................................................................14

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ..................................................................5, 7

*Wilkof v. Caraco Pharm. Labs., Ltd.*,
   280 F.R.D. 332 (E.D. Mich. 2012) .......................................................... passim

*In re WorldCom, Inc. Sec. Litig.*,
   219 F.R.D. 267 (S.D.N.Y. 2003) ..................................................................8

**STATUTES, RULES AND REGULATIONS**

Fed. R. Civ. P. 23, *et seq.* ................................................................................................... passim

**OTHER AUTHORITIES**

H.R. Rep. No. 104-369, 104th Cong., 1st Sess. (1995) (Conf. Rep.), reprinted in
    1995 U.S.C.C.A.N. 730 ............................................................................................9

## I.     **INTRODUCTION**

Court-appointed Lead Plaintiff, Government of Guam Retirement Fund ("Lead Plaintiff" or "Guam"), respectfully submits this memorandum in support of its motion, pursuant to Federal Rules of Civil Procedures 23(a), (b)(3), and (g), seeking: (1) certification of a class of all persons or entities who purchased or otherwise acquired the publicly traded common stock of Invacare Corporation ("Invacare" or the "Company") between February 27, 2009 and December 7, 2011, inclusive (the "Class Period") and were damaged thereby (the "Class")[1]; (2) appointment of Guam as Class representative; and (3) appointment of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") as Class Counsel.

This case is ideally-suited for class treatment under Rule 23.  Lead Plaintiff alleges straightforward claims for violation of the federal securities laws.  As alleged in the Complaint, Defendants made a series of materially false and misleading statements and omissions regarding Invacare's compliance with the Federal Food, Drug, and Cosmetic Act ("FDCA") and current Good Manufacturing Practices ("cGMP"), which caused Invacare stock to trade at artificially inflated prices during the Class Period.  ¶¶147-231, 232-43.[2]  When the truth about Invacare's systemic and pervasive compliance deficiencies was revealed, including that the U.S. Food and Drug Administration ("FDA") intended to issue a Consent Decree For Permanent Injunction ("Consent Decree") that would suspend normal operations at Invacare's corporate headquarters and principal manufacturing facility until the FDA determined that a variety of systemic and chronic regulatory compliance deficiencies had been adequately addressed by the Company, the market price of Invacare common stock declined more than 57% from its Class Period high, causing investors substantial damages.  *Id.* at ¶¶13-14, 232-43.

---

[1]  Excluded from the Class are: (a) Invacare; (b) Defendants Gerald B. Blouch, Invacare's President and Chief Executive Officer ("CEO"), and A. Malachi Mixon, III, Invacare's former Chairman, founder and former CEO; (c) present or former executive officers of Invacare and their immediate family members.

[2]  All citations to "¶_" are to the Amended Complaint For Violation Of The Federal Securities Laws [ECF No. 34] ("Complaint").

This action satisfies all of the requirements for certification as a class action under Rule 23(a) because: (i) the proposed class is so numerous that joinder of all members is impracticable; (ii) questions of fact and law common to the class predominate; (iii) the claims or defenses of the proposed Class representative are typical of the claims or defenses of the Class; and (iv) the proposed Class representative will fairly and adequately protect the interests of the Class.  The requirements of Rule 23(b)(3) are also readily met because questions of law or fact common to members of the Class predominate over any questions affecting only individual Class members, and a class action is a superior means to resolve the issues raised by this action.

The Supreme Court has long recognized the importance and necessity for class actions to redress violations of the federal securities laws.  *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313, 320 (2007) ("This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions . . . .").  Courts in the Sixth Circuit and elsewhere also recognize that the class device is "particularly appropriate" and desirable as a means to resolve federal securities fraud claims, and have repeatedly endorsed the use of class action procedures to adjudicate actions alleging violations of the federal securities laws.  *See, e.g.*, *Plumbers & Pipefitters Nat'l Pension Fund v. Burns*, 292 F.R.D. 515 (N.D. Ohio 2013); *Wilkof v. Caraco Pharm. Labs., Ltd.*, 280 F.R.D. 332 (E.D. Mich. 2012); *Ross v. Abercrombie & Fitch Co.*, 257 F.R.D. 435, 452 (S.D. Ohio 2009); *In re Accredo Health, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 97621 (W.D. Tenn. Mar. 7, 2006).

In recognition of their significant role in protecting investors, courts liberally construe the requirements of Federal Rules of Civil Procedure 23 in favor of class certification in securities fraud cases.  Where, as here, plaintiffs plead a fraud-on-the-market, questions of whether misleading conduct occurred, whether that conduct occurred with the requisite scienter, and whether that conduct caused investors to suffer losses, predominate over other questions.  *See Burns*, 292 F.R.D. at 520 (certification is "routine" in cases involving the fraud-on-the-market doctrine because "common questions predominate").  Further streamlining the certification

process, the Supreme Court has made clear that proof of materiality and loss causation are not required at the class certification stage. *See Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (materiality); *Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179, 2183 (2011) ("*Halliburton I*") (loss causation).

Finally, with respect to element of reliance, the Supreme Court recently reaffirmed that investors are entitled to a presumption of reliance in an open-market securities fraud case – the cornerstone of class action practice under the federal securities laws – and need not show individual reliance on defendants' misstatements. *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2408, 189 L. Ed. 2d 339 (2014) ("*Halliburton II*"). There can be no legitimate dispute that the fraud-on-the-market presumption of reliance applies here because Invacare stock trades on the New York Stock Exchange ("NYSE"), which is consistently recognized by courts – including by the Sixth Circuit – as "open" and "developed" and thus "well suited for application of the fraud on the market theory." *Freeman v. Laventhol & Horwath*, 915 F.2d 193, 199 (6th Cir. 1990); *See In re PHP Healthcare Corp.*, 128 F. App'x 839, 848 (3d Cir. 2005) (NYSE is "one of the most efficient capital markets in the world."). Additionally, Guam submits the accompanying expert report of Bjorn I. Steinholt, CFA ("Steinholt Expert Report"), which establishes that Invacare stock traded in an efficient market at all relevant times.[3]

## II.   SUMMARY OF THE ACTION

### A.   The Proposed Class Representative

Lead Plaintiff is a public pension plan that provides retirement, disability and survivor benefits for eligible government employees, their surviving spouses, and minor children. ¶22. Established in 1951, Guam maintains over $1.4 billion in net assets held in trust for pension benefits. *Id.* Guam purchased 18,000 shares of Invacare common stock on the NYSE during the Class Period and suffered damages as a result of the conduct alleged in the Complaint. *Id.* On October 1, 2013, the Court appointed Guam as Lead Plaintiff and approved its selection of

---

[3] The Steinholt Expert Report is attached as Exhibit A to the Declaration of Benjamin Galdston ("Galdston Declaration"), filed concurrently herewith.

Bernstein Litowitz as Lead Counsel for the Class.  ECF No. 32.  Guam has submitted a sworn certification setting forth its commitment to serving as Class representative, including providing testimony at deposition and trial, and overseeing the prosecution of this action for the benefit of the Class.  ECF No. 8-4.

B.    **Nature Of The Action**

This action arises from Defendants' numerous, serious and pervasive violations of FDA regulations and cGMP at Invacare, including repeated citations and warnings involving incidents of grievous injury and death, beginning prior to and continuing throughout the Class Period.  ¶2. Lead Plaintiff alleges that despite these known conditions, Defendants issued a series of false and misleading statements and omissions concerning Invacare's regulatory compliance, which artificially inflated the market prices of Invacare stock during the Class Period.  ¶¶147-231. While assuring investors in its annual reports, securities filings, press releases, and Company website that Invacare was working with the FDA, strengthening compliance programs and addressing specific problems, Invacare was repeatedly cited for violations in multiple FDA Form 483 inspection reports and received a formal Warning Letter on December 15, 2010.  Ultimately, on December 20, 2012, the U.S. Government filed a Complaint for Permanent Injunction against Invacare, which resulted in the Consent Decree.  When the true facts were revealed on January 4, 2011, October 27, 2011, and December 11, 2011, the market price of Invacare's common stock declined precipitously causing Lead Plaintiff and the Class substantial damages.  ¶¶13-14, 22, 232-43.

On August 18, 2014, the Court sustained the Complaint in its entirety.  ECF. No. 45. Defendants subsequently moved for judgment on the pleadings or for reconsideration of the Court's August 18 Order ("JOP Motion) [ECF No. 55], which the Court similarly denied in its entirety on December 9, 2014.

## III.  ARGUMENT

### A.  Class Certification Standards

Rule 23(a) provides four prerequisites to a class action: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(1)-(4).  These requirements are commonly referred to as numerosity, commonality, typicality, and adequacy of representation, respectively.  *See In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 850 (6th Cir. 2013) ("*Whirlpool II*").  In addition, a proposed class action must also satisfy one of the subdivisions of Rule 23(b).  *Id.*

The party seeking class certification bears the burden of establishing that each of the four requirements of Rule 23(a) and at least one requirement of 23(b) have been met.  *Whirlpool II*, 722 F.3d at 850.  The district court has "substantial discretion in determining whether it will certify a class."  *In re Michael J. Burns; Robert C. Richter*, No. 13-0305, ECF No. 19-2 (6th Cir. Dec. 12, 2013) (declining to accept appeal of order certifying securities class action).  In determining whether class certification is appropriate, "the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  Moreover, in evaluating a motion for class certification, the court generally is bound to accept the substantive allegations of the complaint as true.  *See Amgen*, 133 S.Ct. at 1194-1195 ("Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage").  Thus, "permissible inquiry into the merits of the plaintiffs' claims at the class certification stage is limited . . . to determining whether the Rule 23 prerequisites for class certification is satisfied."  *Whirlpool II*, 722 F.3d at 851 (quoting *Amgen*, 133 S.Ct. at 1194).

As explained below, Rules 23(a) and 23(b)(3) are satisfied and this action should be certified as a class action.

### B.  The Requirements Of Rule 23(a) Are Satisfied

#### 1.  Numerosity Is Established

Rule 23(a)(1)'s "numerosity" provision requires that the class be sufficiently numerous that joinder of all class members is "impracticable."  Fed. R. Civ. P. 23(a)(1).  "There is no bright line numerical test by which the district court can determine when the numerosity requirement is satisfied" and the Sixth Circuit has noted that: "'Impracticability of joinder is not determined according to a strict numerical test but upon the circumstances surrounding the case.'"  *Ross*, 257 F.R.D. at 442 (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 523 n. 24 (6th Cir.1976)).  The exact size of the class need not be known so long as general knowledge and common sense indicate that the class size is substantial.  *Id.*  In the context of securities class actions, the numerosity requirement "is generally assumed."  *Id.* (collecting cases).

Here, the proposed class consists of hundreds, if not thousands of Invacare investors.  Invacare's common stock traded on the NYSE.  Steinholt Expert Report, ¶¶20-21, 45-46 (noting market capitalization of $471 million to $1.1 billion).  As of the start of the Class Period, there were over 31 million shares of Invacare stock outstanding, and during the Class Period, Invacare stock had a reported trading volume of more than 147 million shares with a dollar trading volume exceeding $3.5 billion.  *Id.*, ¶22.  Thus, the Class is comprised of thousands of investors who purchased Invacare stock during the Class Period.  A class of this size is so numerous as to make individual joinder highly impracticable, if not impossible.  *See Michigan State Univ. Faculty Ass'n v. Michigan State Univ.*, 93 F.R.D. 54, 56 n.1 (W.D. Mich. 1981) ("When a class numbers in the hundreds or thousands the impracticability of joinder is obvious . . . .").

#### 2.  Commonality Is Established

Rule 23(a)(2) also requires that the claims involve common questions of law and fact.  "Commonality is not required on every question raised in a class action."  *Swigart v. Fifth Third Bank*, 288 F.R.D. 177, 183 (S.D. Ohio 2012).  "Rather, 'the commonality requirement will be satisfied as long as the members of the class have allegedly been affected by a general policy of the defendant and the general policy is the focus of the litigation.'"  *Ross*, 257 F.R.D. at 442

(quoting *Putnam v. Davies*, 169 F.R.D. 89, 93 (S.D. Ohio 2006)). Because the test is qualitative rather than quantitative, *Adams v. Anheuser-Busch Cos.*, 2012 U.S. Dist. LEXIS 42364, at *18-19 (S.D. Ohio Mar. 28, 2012), commonality is satisfied if the claims of the prospective class share even one central question of law or fact. *Whirlpool II*, 722 F.3d at 853. "The mere fact that questions peculiar to individual class members could remain does not necessarily defeat a finding of commonality." *Ross*, 257 F.R.D. at 442.

Here, as alleged in the Complaint, the common questions of law and fact include: (1) whether the federal securities laws were violated by the Defendants; (2) whether Defendants engaged in a fraudulent scheme and omitted and/or misrepresented material facts; (3) whether Defendants knew or deliberately disregarded that their statements were false and misleading; (4) whether the prices of Invacare common stock were artificially inflated; (5) whether Defendants' fraudulent scheme, misrepresentations and omissions caused Class members to suffer economic losses; and (6) whether the Individual Defendants are liable as "control persons" under Section 20(a) of the Exchange Act. *See* ¶282. Additionally, the nature and existence of material misrepresentations and omissions detailed in the Complaint – the most crucial issues in a securities fraud case – present questions of fact and law common to all members of the Class. *Amgen*, 133 S. Ct. at 1191. The overwhelming weight of authority holds that misrepresentations of the sort alleged here "easily" satisfy the commonality requirement. *Ross*, 257 F.R.D. at 443 (collecting cases). Finally, while Class members may have varying damages because they purchased and sold Invacare common stock at different times, such differences do not defeat commonality. *See Wilkof*, 280 F.R.D. at 340; *Ross*, 257 F.R.D. at 452.

### 3. <u>Guam's Typicality Is Established</u>

The "typicality" requirement of Rule 23(a)(3) is satisfied where "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The test for typicality is "not onerous." *Cates v. Cooper Tire & Rubber Co.*, 253 F.R.D. 422, 429 (N.D. Ohio 2008). Typicality is met if the class members' claims are "fairly

encompassed by the named plaintiffs' claims." *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir.1998) (*en banc*) (quotation omitted).

Guam's claims are typical. Like other Class members, Guam purchased Invacare common stock during the Class Period at inflated prices and suffered damages when the trust was revealed through the alleged corrective disclosures. *See Wilkof*, 280 F.R.D. at 339 (finding typicality where "[a]ll class members will have the same central argument: That they relied on the false representation of Defendant to their detriment."). There is no conflict or antagonism between Guam's interests and those of other Class members because the claims of all Class members derive from the same legal theories and allege the same set of operative facts. Additionally, Defendants' course of conduct – issuing materially false and misleading statements and omissions about Invacare's purported compliance with the FDCA, cGMP, and steps the Company was taking to address the FDA's concerns – commonly affected all Class members because each suffered economic injury from purchasing artificially inflated Invacare common stock.

### 4.   <u>Guam's Adequacy Is Established</u>

The "adequacy" requirement of Rule 23(a)(4) is met when "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The test for adequacy is two-pronged: "(1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Am. Med. Sys.*, 75 F.3d at 1083. Rule 23(a)(4) tests "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent." *Swigart*, 288 F.R.D. at 185-86.

Both prongs of the "adequacy" test have been met in this case. First, based upon its purchases of Invacare stock during the Class Period, Guam's interests are directly aligned with those of the Class, which was injured by the same materially untrue statements and omissions. *See In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 282 (S.D.N.Y. 2003) ("named plaintiffs'

interests are directly aligned with those of the absent class members: they are purchasers of WorldCom equity and debt securities who suffered significant losses as a result of the investments"). When Guam proves its claims, it will also prove the Class's claims, satisfying the adequacy requirement. *See Amgen*, 133 S. Ct. at 1191 (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Additionally, Guam has demonstrated its commitment to vigorously prosecute this case to achieve the best recovery on behalf of the Class. Guam has retained experienced counsel, receives regular status updates, reviews court submissions, and participates in strategic decisions. Further, as an experienced fiduciary and public pension fund with over $1.4 billion in net assets Guam is precisely the type of institutional investor that Congress sought to empower to lead securities class actions when enacting the Private Securities Litigation Reform Act of 1995. *See* H.R. Rep. No. 104-369, at 29 (1995) (Conf. Rep.). Guam, who has a considerable interest in obtaining a recovery for the Class, has successfully served as a Lead Plaintiff in other securities class actions, and has submitted a sworn certification of its commitment to serving as a representative party on behalf of the Class, easily satisfies the adequacy requirement of Rule 23(a)(4). Finally, proposed Class Counsel is highly qualified and capable of prosecuting this Action. Lead Plaintiff's counsel, Bernstein Litowitz, has a proven track record of success in complex cases, such as this action, for over 25 years. *See* Galdston Declaration Ex. B.

## C.    The Requirements Of Rule 23(b) Are Satisfied

In addition to meeting the prerequisites of Rule 23(a), the action also satisfies Rule 23(b)(3), which requires that (1) "the questions of law or fact common to class members predominate over any questions affecting only individual members," and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The primary purpose behind Rule 23(b)(3) is the vindication of the rights of those who would not have the economic power or incentive to bring a wrongdoer into court to redress a wrong imposed on them. The objective is to aggregate small claims to make the cost and effort

-9-

of the litigation economically feasible.  *See Amchem*, 521 U.S. at 617.  A class action under Rule 23(b)(3) is also intended to achieve judicial economy, as well as economies of time, effort and expense.  *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 465 n.2 (9th Cir. 1973).  As noted above, securities fraud actions are "particularly well suited for class certification" due to the predominance of common issues of fact and the impracticability of bringing individual actions, and "have been acknowledged as an essential supplement to criminal prosecutions and civil enforcement actions."  *Ross*, 257 F.R.D. at 455 (citing *Tellabs*, 551 U.S. at 313); *see also Amchem*, 521 U.S. at 625; *Basic Inc. v. Levinson*, 485 U.S. 224, 230-31 (1988)).  Indeed, "[c]ourts have generally considered that class actions are the most favorable means of adjudicating federal securities fraud claims."  *Castillo v. Envoy Corp.*, 206 F.R.D. 464, 474 (M.D. Tenn. 2002).

## 1.    <u>Common Questions Predominate</u>

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 564 (6th Cir. 2007).  "To satisfy the predominance requirement in Rule 23(b)(3), 'a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof.'" *Id.*  "Although the predominance requirement is more difficult to satisfy than commonality under Rule 23(a), the predominance requirement is met if the common question identified 'is at the heart of the litigation.'"  *Salvagne v. Fairfield Ford, Inc.*, 264 F.R.D. 321, 329 (S.D. Ohio 2009) (quoting *Powers v. Hamilton Co. Public Defendant Comm'n*, 501 F. 3d 592, 619 (6th Cir. 2007).

The predominance test is met here because Lead Plaintiff alleges a "common course of conduct" of misrepresentations, omissions and other wrongdoings that affect all members of the Class in the same manner.  *See Salvagne*, 264 F.R.D. at 329 ("Cases alleging a single course of wrongful conduct are particularly well-suited to class certification."); *Ross*, 257 F.R.D. at 452 ("Predominance is a test readily met in certain cases alleging . . . securities fraud.") (quoting

-10-

*Amchem*, 521 U.S. at 625).  The fact that different members of the Class may have invested at different times or been exposed to different misrepresentations does not preclude a finding that common issues predominate because a common course of conduct has been alleged.  *See, e.g.*, *Wilkof*, 280 F.R.D. at 339-40.

Moreover, this action, like other securities fraud class actions, alleges that Defendants perpetrated a "fraud-on-the-market."  Under the fraud-on-the-market doctrine, in an efficient market, all information – including any misrepresentation – is incorporated into the value of a security, and investors rely on the integrity of the market for that security.  *See Halliburton II*, 134 S. Ct. at 2408.  As the Supreme Court recently reiterated, such a fraud-on-the-market gives rise to a presumption that Invacare investors similarly relied on the market price efficiently incorporating all relevant information.  *Id.* (citing *Basic*, 485 U.S. at 246-47).

### (a)     Invacare Stock Trades On A Presumptively Efficient Market

To invoke the fraud-on-the-market presumption, it is sufficient that the market for a security be efficient only in the sense that market prices reflect the available information about the security.  *See id.* at 2410 (presumption of reliance is based on "the fairly modest premise that 'market professionals generally consider most publicly announced material statements about companies, thereby affecting stock market prices'") (quoting *Basic*, 485 U.S. at 247, n.24).  As the Sixth Circuit has stated, securities traded on national markets "such as the New York Stock Exchange . . . are well suited for application of the fraud on the market theory."  *Freeman*, 915 F.2d at 199.  Accordingly, courts in the Sixth Circuit and throughout the nation have recognized that stocks traded on the NYSE and other national exchanges are presumptively efficient.  *See, e.g.*, *Basic*, 485 U.S. at 247; *Bovee v. Coopers & Lybrand,* 216 F.R.D. 596, 606 (S.D. Ohio 2003) (NYSE is "particularly efficient") (collecting cases); *Billhofer v. Flamel Techs., S.A.*, 281 F.R.D. 150, 159-160 (S.D.N.Y. 2012) ("If, for example, a security is listed on the NYSE . . . the market for that security is presumed to be efficient"); *In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*, 2013 WL 396117, at *11 (D.N.J. Jan. 30, 2013) (same); *In re Computer Sci. Corp. Sec. Litig.*, 288 F.R.D. 112, 120 (E.D. Va. 2012) ("It is not surprising that no other federal courts

have concluded that common shares traded on the NYSE are not traded in an efficient market."); *Lumen v. Anderson*, 280 F.R.D. 451, 459-60 (W.D. Mo. 2012) ("[cases] too numerous to cite establish [that] the NYSE [is] at least entitled to a presumption of efficiency, making it incumbent upon Defendants to rebut that presumption").[4]  Finally, market efficiency is confirmed by the accompanying expert report.  Steinholt Expert Report at ¶¶52-54.

Accordingly, the market for Invacare common stock is presumptively efficient.

**(b)    The *Cammer* Factors Confirm Market Efficiency**

In addition to considering whether a security traded on a national market, courts in the Sixth Circuit may also consider the five-factor test set forth in *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989), for determining efficiency: "(1) a large weekly trading volume; (2) the existence of a significant number of reports by securities analysts; (3) the existence of market makers and arbitrageurs in the security; (4) the eligibility of the company to file an S-3 Registration Statement; and (5) a history of immediate movement of the stock price caused by unexpected corporate events or financial releases."  *Freeman*, 915 F.2d at 199 (citing *Cammer*, 711 F. Supp. at 1286-87); *see Plumbers & Pipefitters Nat. Pension Fund v. Burns*, 967 F. Supp. 2d 1143, 1155 (N.D. Ohio 2013)

Lead Plaintiff submits the expert report of Bjorn I. Steinholt, CFA, which demonstrates that – although not required[5] – the market for Invacare common stock during the Class Period satisfies each of the *Cammer* factors, confirming that Invacare common stock traded on an

---

[4] *See also Kelleher v. ADVO, Inc*., 2009 WL 2413362, at *5, *19 (D. Conn. Mar. 27, 2009) (fact that ADVO stock traded on the NYSE, "an established efficient market," met plaintiffs' evidentiary burden, and shifted burden of rebuttal to defendant) (certifying class); *Lapin v. Goldman Sachs & Co*., 254 F.R.D. 168, 183 (S.D.N.Y. 2008) (citing *Basic*, 485 U.S. at 249 n. 29) ("[N]o argument could be made that the [NYSE] is not an efficient market"); *In re NYSE Spec. Sec. Litig*., 405 F. Supp. 2d 281, 322 (S.D.N.Y. 2005) (describing NYSE's auction market structure as among "the world's most efficient").

[5] *See, e.g.*, *Bovee*, 216 F.R.D. at 605 (while the court "may" consider the *Cammer* factors, it was unnecessary to do so because defendant's stock traded on the NYSE); *In re Merck*, 2013 WL 396117, at *11 ("In this case, however, a *Cammer* analysis is not required for Plaintiffs to establish market efficiency" because "[i]t is undisputed that Merck stock trades on the New York Stock Exchange").

efficient market during the Class Period. *See* Steinholt Expert Report, ¶¶7, 18-53, 58. As set forth in the Steinholt Expert Report, the first four *Cammer* factors establish that Invacare's stock traded in an open and developed market, that market participants had the sophistication to understand the economic implications of new and material information (market makers/institutions) and that they analyzed (analyst coverage) and traded (trading volume) on the information. *Id.*, ¶¶22-32. *See, e.g.*, *Burns*, 967 F. Supp. 2d at 1161 ("efficiency supported where a plaintiff introduces evidence of high average weekly trading volumes, heavy analyst coverage, or the presence of numerous market makers."). Additionally, Mr. Steinholt's analysis of *Cammer* factor five demonstrates that: (a) market information was quickly incorporated into Invacare's stock price, (b) industry information was quickly incorporated into Invacare's stock price; (c) Company-specific information was quickly incorporated into Invacare's stock price; and (d) disclosures of the alleged truth were quickly incorporated into Invacare's stock price. *Id.* at ¶53. Finally, Mr. Steinholt found no evidence of market inefficiency. *Id.*, ¶¶35, 45, 53.

Accordingly, Invacare common stock traded in an efficient market during the Class Period, and common issues predominate. *See Bovee*, 216 F.R.D. at 607 ("When the fraud on the market theory is invoked, courts agree that the legal and factual issues common to all members of the class will predominate over individual issues.").

### (c) Reliance Is Also Presumed Under *Affiliated Ute*

The Supreme Court's decision in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), provides an alternative basis for a class-wide presumption of reliance. Under *Affiliated Ute*, reliance is presumed where "a plaintiff's claim is based on a defendant's failure to disclose material information." *Litton Industries, Inc. v. Lehman Bros. Kuhn Loeb Inc.*, 967 F.2d 742, 748 (2d Cir. 1992). In such circumstances, individual reliance need not be proven. Instead, "[a]ll that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in the making of [its] decision." *Affiliated Ute*, 406 U.S. at 131. Reliance may be presumed here under *Affiliated Ute* as to claims based on Defendants' omissions of material adverse information concerning, *inter alia*, Invacare's

-13-

regulatory compliance deficiencies, steps the Company was purportedly taking to address the FDA's documented violations of the FDCA and cGMP, and substantial costs and other resources necessary to remediate those deficiencies. *See, e.g., City of Livonia Emps. Ret. Sys. v. Wyeth*, 2012 WL 4086474, at *10 (S.D.N.Y. 2012) ("the Court has little difficulty concluding that the allegedly omitted safety information about Pristiq [a drug with "multi-billion dollar potential"] would have likely affected the 'desire of investors to buy, sell, or hold [Wyeth's] securities.'").

### 2.  Class-Wide Damages Are Measureable

The Supreme Court held in *Comcast* that "courts should examine the proposed damages methodology at the certification stage to ensure that it is consistent with the classwide theory of liability and capable of measurement on a classwide basis." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 123 n.8 (2d Cir. 2013) (citing *Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1433-35 (2013)).  Where plaintiffs' proposed measure for damages is "directly linked with their underlying theory of classwide liability," it is "in accord with" *Comcast*. *Id.*  Courts presiding over securities fraud actions involving the fraud-on-the-market presumption have consistently upheld the damages theory that the "misrepresentations caused losses of the same kind: the artificial inflation of . . . share price," *McIntire v. China MediaExpres Holdings, Inc.*, 2014 WL 4049896, at *14 (S.D.N.Y. Aug. 15, 2014), which is precisely Lead Plaintiff's theory of damages here.  Mr. Steinholt has opined that class-wide damages are calculable based on the inflation in the price of Invacare's stock.  Steinholt Expert Report ¶¶7, 55-59.  Individual damages for each Class member are calculable based on when each Class member purchased, and, if applicable, sold the stock.  *Id.* at ¶58.

### 3.  A Class Action Is A Superior Method
### Of Adjudicating Lead Plaintiff's Claims

Rule 23(b)(3) also requires that the class resolution be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  The superiority inquiry involves a determination as to whether the objectives of the class action procedure will be achieved in the particular case and a comparison of alternative mechanisms for

-14-

dispute resolution. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1023 (9th Cir. 1998). It is well recognized that "securities fraud actions are particularly well suited for class certification due to the predominance of common issues of fact and the impracticability of bringing individual actions." *Ross*, 257 F.R.D. at 455; *see Direct Gen. Corp.*, 2006 WL 2265472, at *7 ("Plaintiffs contend that class actions are particularly appropriate means for resolving securities fraud litigation. This Court agrees."). Accordingly, securities cases "easily satisfy the superiority requirement of Rule 23." *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 80 (S.D.N.Y. 2009).

Here, class certification promotes judicial efficiency by permitting common claims and issues to be tried once with a binding effect on all parties. Class certification is the only way to afford relief to those whose claims are simply too small to justify individual lawsuits. Further, the nationwide geographical dispersion of Class members, due to the availability of Invacare common stock on a national exchange, makes a class action resolution superior to other methods for adjudication. In addition, Lead Plaintiff knows of no difficulty in the management of this litigation that would preclude its maintenance as a class action. Because individual litigation of each Class member's claims would be highly inefficient and impracticable, a class action is the superior means of adjudicating this action.

## II.     CONCLUSION

For the foregoing reasons, this action should be certified as a class action, Lead Plaintiff Guam should be appointed Class Representative, and Bernstein Litowitz should be appointed counsel for the Class.

Dated: January 30, 2015                    Respectfully submitted,

                                           **BERNSTEIN LITOWITZ BERGER
                                              & GROSSMANN LLP**

                                           */s/ Benjamin Galdston*
                                           _____

                                           Blair A. Nicholas (admitted *Pro Hac Vice*)
                                           Benjamin Galdston (admitted *Pro Hac Vice*)
                                           David R. Kaplan (admitted *Pro Hac Vice*)
                                           Lucas E. Gilmore (admitted *Pro Hac Vice*)
                                           12481 High Bluff Drive, Suite 300
                                           San Diego, California 92130

Telephone:     (858) 793-0070
Facsimile:     (858) 793-0323

*Counsel for Lead Plaintiff Government of Guam
Retirement Fund and Lead Counsel for the Class*

**CLIMACO, WILCOX, PECA, TARANTINO
& GAROFOLI CO., L.P.A.**
John R. Climaco (0011456)
Scott D. Simpkins (0066775)
55 Public Square, Suite 1950
Cleveland, Ohio 44113
Telephone:     (216) 621-8484
Facsimile:     (216) 771-1632

*Local Counsel for Lead Plaintiff Government of
Guam Retirement Fund*

## <u>CERTIFICATE OF SERVICE</u>

A copy of the foregoing was filed electronically this 30th day of January, 2015. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

*/s/ Benjamin Galdston*
Benjamin Galdston